93 204
95 250

93 204
110 624

93 204
112 216

DWIGHT CUTLER v. WILLIAM STEELE, NANCY J. STEELE, THE GRAND RAPIDS SAVINGS BANK, THE FIRST NATIONAL BANK OF IONIA, ET AL.

*Mortgage—Consideration—Parol evidence—Recording laws— Fraudulent conveyances.*

1. Parol evidence is admissible to show the true character of a mortgage, and for what purpose and consideration it was given.

    So *held*, where a mortgage purported to have been given to secure the payment of a note made by the mortgagor to the mortgagee, and, in a suit brought to foreclose the mortgage, the mortgagee was allowed to show by parol evidence that the note was in fact given to a third person and indorsed by the mortgagee, and that the mortgage was given as security for such indorsement.

2. A real-estate mortgage was not recorded for 46 days after its execution and delivery to the mortgagee, and during that time the mortgagor secured the renewal of certain notes held by two banks at the time the mortgage was given. The banks were ignorant of the existence of the mortgage at the time of such renewal. Judgments were secured on the notes, and executions levied on the mortgaged premises. And in a suit brought by the mortgagee to foreclose the mortgage, in which the banks were made defendants, it is held that the lien of the mortgage is not subject to that of the executions, no fraud being charged.

Appeal from Ionia. (Person, J., presiding.) Submitted on briefs June 23, 1892. Decided October 4, 1892.

Bill to foreclose a mortgage. Defendant banks appeal. Affirmed. The facts are stated in the opinion.

*George A. Farr,* for complainant.

*Taggart, Wolcott & Ganson,* for defendant Grand Rapids Savings Bank.

*A. A. Ellis* and *F. C. Miller,* for defendant First National Bank of Ionia.

Long, J. The bill in this cause was filed to foreclose a mortgage. The mortgage was executed July 12, 1889, by William Steele to complainant, the consideration expressed being the sum of $25,000. It conveyed about 500 acres of land in the township of Ionia, Ionia county. It was signed by himself and his wife, Nancy J. Steele, and was executed at their home, in Ionia county, the complainant living at Grand Haven, this State. The condition of payment, as expressed, is:

"If the said party of the first part shall and do well and truly pay, or cause to be paid, to the said party of the second part, the sum of $25,000, according to a certain promissory note executed by William Steele, bearing even date herewith, to the said party of the second part, to which this indenture is collateral security, then these presents and said note shall cease and be null and void."

The mortgage was recorded on August 29, 1889.

On the same day the mortgage was given, William Steele executed a deed of an undivided interest in the same premises described in complainant's mortgage to his wife, Nancy J. Steele. On the same day he executed a real-estate mortgage upon certain other property in Ionia city and township to William Dunham, of Grand Rapids, Mich.; also, upon the same day, he executed a mortgage upon certain property in the city of Ionia to his sister, Mary M. Hancock; also, upon the same day, he executed to the complainant in this case, Dwight Cutler, a chattel mortgage, purporting to be given for the sum of $40,000, upon all the personal property, chattels, and effects of said William Steele situated in the county of Ionia; also, upon the same day, he executed a deed of all the land he then owned in Montcalm county, which was about 480 acres, to his brother Michael L. and wife, being a joint deed to Michael L. and Jessie J. Steele. On the 15th day of July of the same year, William Steele executed a bill of sale of all the personal property he then owned in the

county of Montcalm to his brother James A. Steele. Each of said conveyances was recorded upon the 29th day of August, A. D. 1889, within a very few. minutes of each other, excepting the last-named deed and the bill of sale to James A. Steele, which were not recorded until the 30th, or the next day.

At the time of the giving of the several conveyances, William Steele was indebted to the First National Bank of Ionia, Mich., in the sum of $15,000, and to the Grand Rapids Savings Bank in the sum of about $9,000. Between the date of the giving of the several conveyances hereinbefore referred to and the recording of the same, and on or about the 20th day of August, William Steele renewed, at said First National Bank of Ionia, one note of $3,000; and he also renewed one note at the Grand Rapids Savings Bank of $5,000 on July 12, and upon the 2d of August, A. D. 1889, renewed another note at the Grand Rapids Savings Bank, of $4,000. At the time of the renewals of the several notes referred to, neither the First National Bank of Ionia nor the Grand Rapids Savings Bank had any knowledge from the defendant William Steele, or from anybody else, but that William Steele was financially responsible, or that he had given any mortgages, deeds, or other conveyances upon any of his property; and the business was transacted and the money loaned or advanced entirely upon the supposed financial responsibility of the defendant William Steele.

Upon the 4th day of February, 1890, the First National Bank of Ionia obtained a judgment against William Steele for $7,424.45, together with costs, making a total of $7,472.45, upon which execution was issued against William Steele, and the sheriff duly indorsed upon this execution a levy upon the lands covered by complainant's mortgage, and upon the same day filed a notice of such levy in the office of the register of deeds of Ionia county.

The Grand Rapids Savings Bank of Grand Rapids, on the 5th day of February, 1890, duly recovered a judgment against William Steele as defendant, upon the notes given upon the 12th of July and the 2d of August, 1889, for the sum of $9,202.71. Execution was issued upon the same, a levy duly made on lands covered by said mortgage, and notice properly filed in the office of the register of deeds.

The note in this case, and which complainant claims is the note that was given with the mortgage, is as follows:

"GRAND HAVEN, MICH., July 13, 1889.

"Nine months after date I promise to pay to the order of Sarah C. Savidge twenty-five thousand dollars, at the First National Bank of Grand Haven, with interest at seven per cent., value received.          WILLIAM STEELE."

Upon the back is indorsed:  "D. CUTLER."

It appeared upon the hearing below that in the early part of July, 1889, Mr. Steele applied to Mr. Cutler, the complainant, for this loan of $25,000, which was to be secured by a mortgage upon real estate. Mr. Cutler did not have the cash to spare, but thought it could be obtained from Mrs. Sarah C. Savidge, and agreed with Steele to procure him the loan. On July 13, 1889, Steele went to Grand Haven with the mortgage already executed by himself and wife. Mr. Cutler did not then have the money, but a note was prepared to Mrs. Savidge for that amount, and signed by Mr. Steele and Mr. Cutler, the complainant, and the money paid over to Mr. Steele. Mr. Cutler took the mortgage, and Mrs. Savidge the note. Mr. Cutler claims the mortgage was given to secure this note, upon which he was liable to Mrs. Savidge.

No actual fraud is claimed in the transaction. The defendants, however, deny the complainant's right to foreclose his mortgage, unless it be subject to the liens of defendants the First National Bank of Ionia and the Grand Rapids Savings Bank, for the following reasons:

"1. That there was no debt in existence at the date of the execution of complainant's mortgage.

"2. That the mortgage, if it is collateral to anything, is entirely different than the note offered in evidence, and which complainant claims was the debt in this case secured by his mortgage.

"3. That the testimony of complainant shows beyond dispute that there was no mistake of fact in drafting the mortgage, and consequently he is not entitled to have it reformed by a court of equity.

"4. That, although the solicitors for defendant the Grand Rapids Savings Bank distinctly stated that they had claimed no actual fraud in their answer, nor proved any, and the solicitor for the First National Bank of Ionia said, in reply to a question by the judge, 'We do not claim any actual fraud, your honor, as I suppose the Supreme Court has substantially passed upon that,' yet the defendants do and have at all times claimed that the retaining of the mortgage, together with the other conveyances, from public record, in order to enable Steele to secure credit, was, in effect, a legal fraud, whether any actual fraud was intended or not.

"5. The fact that said mortgage was in existence from the 12th day of July, and not recorded until the 29th day of August, 1889, and that during the interval between the date of the giving of said mortgage, together with the other conveyances in the case, and the withholding of the same from public record, William Steele, the mortgagor, obtained credit at the defendant Grand Rapids Savings Bank for about $9,000, and at the First National Bank of Ionia for about $3,000, neither of said banks having any knowledge of the existence of said mortgage; and that the liens, by virtue of the executions of the defendants, should have priority to complainant's mortgage."

While it is true that the mortgage was made and signed by Mr. Steele and his wife on July 12, it is equally clear that the same was not delivered to Mr. Cutler until the 13th, and after the money was procured from Mrs. Savidge, and passed over to Mr. Steele. We think there is nothing in the first point made, that the mortgage was collateral to a different note than the one offered in evidence. Mr. Cutler fully explains the transaction, and how the note came to be made to Mrs. Savidge.

The real inquiry upon the hearing was whether or not

there was a valid consideration for the mortgage; and parol evidence was admissible to show the true character of the mortgage, and for what purpose and consideration it was given. This inquiry was proper to be made. 1 Jones, Mortg. § 379. Mr. Cutler was holden for the payment of this $25,000 to Mrs. Savidge, and actually paid it before the commencement of foreclosure proceedings. He had a right to be secured for this indorsement, and was secured under this mortgage. The fact that the note was described in the mortgage as having been executed by Mr. Steele to Mr. Cutler, when in fact it was executed to Mrs. Savidge, was open to proof of the real facts by parol evidence. It was an inquiry into the real consideration for which the mortgage was given.

The mere fact that the mortgage was made and delivered July 13, and not recorded until August 29 following, and that in the mean time the notes had been renewed by the two banks, would not, in the absence of fraud, vitiate the mortgage. In the case of a mortgage of chattels, the statute provides that there shall be a delivery of the chattels, followed by a continued change of possession, or the mortgage will be void, unless the mortgage, or a true copy thereof, be filed in the office of the township clerk. How. Stat. § 6193. There is no such provision of the statute in relation to real-estate mortgages, and no case has been cited holding that the mere fact that the mortgagee has failed to record his mortgage makes it void as against other creditors who have not acquired a lien, where no fraud is charged. The mortgagee did not lose the lien of his mortgage by this neglect, under the circumstances stated in this record, and the fifth proposition of defendants' counsel has no force. The complainant took the chances that some innocent party might obtain a prior lien during the time his mortgage remained off the record;

but, in the absence of fraud or collusion with the mort-
gagor, such delay cannot postpone his lien to one who has
not obtained a lien in the mean time.

The decree of the court below will be affirmed, with
costs.

McGRATH, GRANT, and MONTGOMERY, JJ., concurred.
MORSE, C. J., did not sit.