GRAND RAPIDS WOOD FINISHING CO. *v.* HATT.

1. CONTRACTS — VERBAL AGREEMENTS — MERGER IN SUBSEQUENT WRITING.

   All verbal agreements concerning the subject-matter of a contract are merged in the writing subsequently executed coving the terms of the contract.

2. SAME—SALE OF SECRET FORMULAS—CONSIDERATION—ESTOPPEL.

   A contract for the sale of certain secret formulas upon a royalty basis contained no provision expressly binding the purchaser to manufacture the articles forming the subject-matter of the formulas, but both parties treated the contract as imposing such duty, and the purchaser manufactured and supplied to the seller of the formulas all the articles he required for resale during several months, after which the seller of the formulas sold his rights under the contract. On a bill by the purchaser of the formulas to enjoin the manufacture by the seller of the articles described and to enjoin the sale by him of the formulas to others, *held*, that defendant could not complain that the contract was without consideration because it contained no clause requiring the complainant to manufacture, since to do so he would have to take the position that if complainant had stood upon the strict letter of its contract, he would have been unable to realize anything from the sale of his rights under it.

3. SAME — LEGALITY OF OBJECT — CONTRACTS IN RESTRAINT OF TRADE.

   Act No. 329, Pub. Acts 1905, relative to contracts in restraint of trade, does not render invalid a contract for the sale of a business and the secret formulas for the manufacture of the articles manufactured nor render unlawful the agreement of the seller not to use the formulas nor disclose them to others.

Appeal from Kent; Wolcott, J. Submitted February 20, 1908. (Docket No. 88.) Decided March 31, 1908.

Bill by the Grand Rapids Wood Finishing Company against Charles E. Hatt to enjoin the manufacture, disposal, or divulging of certain secret formulas. Defend-

ant filed an answer in the nature of a cross-bill for an accounting. From a decree for complainant and dismissing the cross-bill, defendant appeals. Affirmed.

*Kleinhans & Knappen,* for complainant.

*Barnard & Smith,* for defendant.

BLAIR, J. Prior to December 1, 1905, defendant, Hatt, was the owner of certain formulas for the manufacture of furniture polishes, which he was selling, principally, to the retail trade. Complainant was also engaged in the manufacture of furniture polishes, selling, principally, at wholesale. There were upwards of 500 to 1,000 manufacturers of furniture polishes in the country.

On December 1, 1905, upon solicitation by defendant, Hatt, a contract was entered into between him and complainant, containing, among others, the following clauses:

"First party, for the considerations hereinafter named, hereby sells, assigns and sets over to the second party absolutely, certain formulas owned by him for the manufacture of the following, namely: Hatt's Cleaner and Polish, Hatt's Combination Rubbing Polish, Hatt's Special King Finish for Repair Work, and Hatt's Varnish Remover, together with the exclusive right to manufacture and sell all articles in accordance with said formulas. All improvements or changes in said formulas hereafter made by first party during the life of this contract shall inure to the benefit of the second party, and shall be considered as conveyed by this instrument, together with the sole right to manufacture and sell thereunder.

"Second party, in consideration for said sale, agrees to pay first party as a royalty for the manufacture of said articles, twenty per cent. of the net price received, after deducting all selling and shipping expenses, including commissions, for the sale of any and all of said articles, in accordance with the schedule of prices hereinafter mentioned and annexed hereto. Second party also agrees, as part of said consideration, to pay first party a commission of ten per cent. (10%) upon net price received for all orders received for any of said articles sold or turned in by first party and accepted by second party. * * *

"First party further agrees, as part of the consideration of the agreements of second party hereinbefore stated, that he will not, during the life of this contract, sell or dispose of, to any persons whatsoever, the said formulas or any of them, and shall not divulge to any person whatsoever the said formulas or any of them.

"It is mutually agreed that the life of this contract is twenty (20) years from the date hereof."

After the execution of the contract, defendant went out on the road and, for a little over five months, attempted to sell the polishes covered by the contract. During this period his gross sales were $814.16, upon which his commissions and royalties amounted to $211.02. During the same period complainant advanced to defendant $804.70. Some time in May, 1906, complainant refused to advance any more money for expenses. On May 26, 1906, defendant sold and assigned to Albert H. Simpson, bookkeeper and secretary of complainant, his interest under the contract.

"It being the intention by this sale and assignment to transfer to second party all my right, title and interest in and to the formulas mentioned in said contract above described, together with all the right now remaining to me, if any, to the use of the names, 'Hatt's Cleaner,' 'Hatt's Polish,' 'Hatt's Cleaner and Polish,' 'Hatt's Combination Rubbing Polish,' 'Hatt's Special King Finish for Repair Work,' 'Hatt's Varnish Remover,' and all right whatsoever to manufacture and sell articles under said names or any other names whatsoever during the life of the contract."

Mr. Simpson borrowed the amount of the purchase price from complainant by check, which check he indorsed over to defendant. After the sale to Mr. Simpson, defendant commenced making and selling the polishes covered by the contract, under his own name, and also offered to sell one of the formulas to a third person for $25, in violation of the agreement.

Complainant filed its bill of complaint June 16, 1906, asking for an injunction to restrain defendant from manufacturing under the formulas sold to complainant and

from disposing of or divulging the formulas. Defendant filed an answer, denying that a true copy of the contract was attached to the bill of complaint, alleging that the contract contained a clause "that the complainant was to furnish expense money for this defendant in making sales of said goods specified in the said contract, which does not appear in said copy." The answer also alleged "that the said so-called contract made between the complainant and this defendant is illegal and void, as opposed to public policy and in restraint of trade, intending to establish a monopoly, in violation of the laws of this State." The answer also alleged that defendant "did not receive any consideration for making the said contract and the said complainant acquired no rights or interests to or in the said formulas or processes or any of them or to manufacture the articles named and made by use of the said formulas." The answer also alleged fraudulent intent on the part of the complainant to induce the defendant to enter into the contract for the purpose of preventing competition in complainant's business and defrauding defendant, in pursuance of which fraudulent purpose, complainant refused to pay the royalties earned and fraudulently concealed from the defendant the amount of the sales and refused to permit him to examine their books and papers, and sold compounds manufactured under his formulas, under other names than those mentioned in the contract. The answer also avers a fraudulent conspiracy between complainant and the said Simpson to obtain the assignment of the contract and that said Simpson really acted in behalf of the complainant in obtaining said assignment and the same was paid for by the complainant. The answer prays, by way of affirmative relief, for an accounting; that the said complainant be enjoined from selling any of the defendant's formulas or disclosing the same; and that the contract of December 1st be decreed to be null and void.

Upon hearing in open court, the preliminary injunction theretofore granted was made perpetual, and defendant

was enjoined from selling or divulging the formulas, or from manufacturing and selling the articles covered by the formulas, and from manufacturing or selling articles under the names of the articles covered by the formulas. The cross-bill of defendant was dismissed. Defendant appeals from this decree.

Counsel for appellant, in their brief, present two principal points for our consideration:

(1) There is no consideration given by the complainant to the defendant.

(2) The contract is void, as being opposed to public policy, in restraint of trade, intended to create a monopoly and to prevent competition.

1. It is contended by defendant's counsel that, as a matter of fact, no royalties have ever been paid under the contract, but that all the money that was paid Hatt was given him in pursuance of an oral agreement, as follows:

"There was a change made in the amount of royalty to be paid in under the terms of the contract. A change was made from 25 per cent. to 20 per cent. The change was made with verbal understanding that they should furnish me money for expenses and to live on until the business was on such a paying basis that it would pay dividends to keep me and the rest of us from the business."

The testimony is in conflict as to what the exact character of this verbal understanding was, the defendant Hatt's version of it being as indicated in the quotation. Defendant, however, testified:

"Well, now, I couldn't say as to whether the change was made before the contract was signed. I had it in mind that it was signed when that change was made and in the presence of Mr. Scribner and me and Mr. Van Nemy, but I would not swear as to that positively."

Mr. Scribner, complainant's president, Mr. Simpson, the secretary, and Mr. Van Nemy, all testified that the change from 25 per cent. to 20 per cent. was made before the contract was signed. It is clear that, under the testimony, the verbal agreement, if of the character stated by

defendant, was merged in the contract thereafter executed, as well as the further agreement alleged by defendant under this point that "they would go ahead and advance the business, advertise it, and put it on a paying basis." While there is no provision in the contract expressly binding the complainant to manufacture any of the articles sold, both parties seem to have treated the contract as imposing such duty, and defendant obtained all of the polishes which he called for, received credit for the royalties and commissions earned, and finally sold his interest in the contract for $150. Under such circumstances, he cannot now take the position that if complainant had stood upon the strict letter of the contract, he would have been unable to realize anything from the sale of his property.

2. This is the principal point presented in the brief of counsel and is, we think, without legal foundation. Act No. 329 of the Public Acts of 1905, "relative to agreements, contracts and combinations in restraint of trade or commerce," upon which defendant relies, provides:

"SECTION 6. This act shall not apply to any contract mentioned in this act nor in restraint of trade, where the only object of the restraint imposed by the contract is to protect the vendee or transferee of a trade, pursuit, avocation, profession or business, or the good will thereof, sold and transferred for a valuable consideration in good faith and without any intent to create, build up, establish or maintain a monopoly."

The principal value, in many instances, of a business of manufacturing an article whose component parts are unknown, inheres in the secret formula or process for manufacturing it, and it is clear that unless the owner of such secret process is able to make a valid contract not to reveal the formula, the power to sell such property will be practically denied him. The secret process enhances and is a part of the value of the articles manufactured and of the business carried on under it, and is as much a lawful subject of disposal as property as the articles themselves

manufactured. A contract to sell such process is, therefore, valid and binding. *O. & W. Thum Co.* v. *Tloczynski*, 114 Mich. 149 (38 L. R. A. 200); *Peabody* v. *Norfolk*, 98 Mass. 452; *Tode* v. *Gross*, 127 N. Y. 480 (13 L. R. A. 652); *Westervelt* v. *Supply Co.*, 154 Ind. 673; *Morse Twist Drill & Machine Co.* v. *Morse*, 103 Mass. 73.

We do not find any evidence of fraud or conspiracy to defraud defendant, as claimed in his answer; neither is his contention that the money advanced to him was not to be repaid supported by a preponderance of the testimony. The circuit judge who heard the case found against him on these questions of fact, and we are satisfied with his conclusions.

The decree is affirmed, with costs to complainant.

GRANT, C. J., and MONTGOMERY, OSTRANDER, and MOORE, JJ., concurred.