QUISLE *v.* BREZNER.

1. CONTRACTS—CONSTRUCTION—AMBIGUITY—PAROL TESTIMONY.
Where an agreement is reduced to writing, and there is no
uncertainty as to the extent of the obligation assumed by
each, all parol agreements or understandings are merged
in it, and extrinsic evidence is not admissible to explain
its meaning or determine the construction which shall be
placed upon the writing.

2. SAME—GENERAL EXPRESSIONS RESTRICTED BY PARTICULAR.
In the construction of a contract in writing, it is a general
rule followed by courts that general expressions will be
restricted by particular descriptions or additions following
them, and where both the general and special expressions
may be given reasonable effect, both must be retained.

3. SAME.
A contract in writing whereby plaintiff agreed to "furnish
all labor and material required for the mason work neces-
sary for the erection and completion of brick building, *in-
cluding brick, sand, lime, partition tile, tile coping, set-
ting cut stone,* etc., which said building is being erected"
for defendant, construed, and *held,* that the purpose of the
italicized words was to limit the obligation of plaintiff to
the furnishing of the material therein particularly stated,
and to include the furnishing of labor to be performed on
the material not so furnished; and that, as so construed,
said contract is not ambiguous.

4. SAME.
Material included in the specifications, which were made a
part of the contract, and which was in no way excepted
in the contract as construed, *held,* chargeable to plaintiff.

5. SAME.
Where a change in the construction of a cornice resulted in
a saving of $100 to plaintiff, said amount should be de-
ducted from the contract price.

Appeal from Wayne; Mandell (Henry A.), J. Sub-

On the general rule that parol evidence not admissible to vary,
add to, or alter a written instrument, see note in 17 L. R. A. 270.

mitted October 13, 1920. (Docket No. 103.) Decided December 21, 1920.

Bill by Oscar Quisle against Wolf Brezner and others to enforce a mechanics' lien. Defendant Brezner filed a cross-bill for an accounting. From a decree for plaintiff, defendant Brezner appeals. Modified and affirmed.

*Ezra H. Frye,* for plaintiff.

*Denby, Kennedy & O'Brien,* for appellant.

SHARPE, J. The plaintiff and defendant Brezner entered into a contract in writing on the 27th day of February, 1917, in which plaintiff agreed to "furnish all labor and material required for the mason work necessary for the erection and completion of brick building, *including brick, sand, lime, partition tile, tile coping, setting cut stone,* etc., which said building is being erected" for Brezner in the city of Detroit, "according to the plans, drawings, details and specifications made or to be made by Emil A. Drolet, architect," for the sum of $6,146. The plaintiff, claiming a balance due him on the completion of the contract, filed the bill of complaint herein to enforce a lien he had theretofore filed against the building and the land on which it was erected. Mr. Brezner, who will hereafter be called the defendant, claims that plaintiff was overpaid, and by way of cross-bill seeks decree for the amount of such overpayment. The trial court found $1,742.73 (which included some interest) due plaintiff, and a decree was entered adjudging such amount to be a lien on the premises. The defendant Brezner appeals. The rights of the other parties who were made defendants are not involved in the appeal.

The principal question in dispute is as to what material and labor plaintiff was required to furnish un-

der the agreement. The specifications, which were made a part of the contract, read in part as follows:

"The bidding shall be in a lump sum for each class of work as follows:
"Mason work:—
"All brick, tile, stone, concrete, iron and all work and materials usually furnished and done by the mason contractor."

In separate paragraphs the particular work to be done is specifically described under the following headings: "Excavation," "Footing Tiles," "Crock Drains," "Footings," "Sidewalks," "Brick Work," "Brick," "Brick Laying," "Mortar," "Flue Lining," "Fire Wall," "Basement," "Stone Work," "Iron Work," "Foundation for Boilers." Without such heading it is provided: "Mason to furnish ceramic floors in bathrooms and at front entrances and where called for," and that "The furnishing of all structural work and iron work is included in this specification."

The plaintiff was permitted, over the objection of the defendant, and for the reason that the contract was found to be ambiguous, to testify to the understanding had between himself and the defendant as to what materials he was to furnish and what work he was to do under the contract. It is his claim that he was not required to furnish the iron or the cut stone used in the building, or to put in the concrete floor in the basement, or to furnish the ceramic floors as provided for in the specifications. He insists that the language, "furnish all material required for the mason work," in the contract is so modified by the words which follow "including" as to make its interpretation uncertain; that it may be "understood in more senses than one" and therefore parol evidence was properly received to inform the court as to what the parties in fact agreed upon.

The law in this State is well settled that where an

agreement is reduced to writing, and there is no uncertainty as to the extent of the obligation assumed by each, all parol agreements or understandings are merged in it, and extrinsic evidence is not admissible to explain its meaning or determine the construction which shall be placed on the writing. *Grand Rapids Wood Finishing Co.* v. *Hatt,* 152 Mich. 132; *Wenzel* v. *Kieruj,* 168 Mich. 92; *Boston Piano & Music Co.* v. *Clothing Co.,* 199 Mich. 141. To permit the reception of parol evidence would defeat the very object sought to be accomplished by reducing the agreement to a ·written form.

·Is this contract ambiguous? We must determine this question from a reading of the contract itself. We have no right to seek the aid afforded by the testimony of witnesses or to consider the practical construction the parties have placed upon it. If, aided by such rules of construction as have been announced and followed by courts, we are able to ascertain what the parties really intended by the words used in the contract, we must, in its interpretation, be governed thereby. One of such rules is that "general expressions will be restricted by particular descriptions or additions following them." 13 C. J. pp. 537, 538, and cases cited. Where, however, both the general and special expressions may be given reasonable effect, both must be retained. The reasoning of the court in *Fisher Electric Co.* v. *Bath Iron Works,* 116 Mich. 293, and *Wenzel* v. *Kieruj, supra,* will be found instructive. Were it not for the insertion of the italicized words in this contract, no claim of ambiguity could be made. It provides in no uncertain terms that the plaintiff shall furnish all the material and perform all the labor to complete the "mason work" on this building according to the specifications.

We must, however, assume that there was some pur-

pose in inserting the italicized words. After careful consideration, we can discover no other possible purpose than to limit the obligation of plaintiff to the furnishing of the material therein particularly stated. Fairly construed, we think it obligates the plaintiff to perform all the labor included in the specifications and to furnish the brick, sand, lime, partition tile and tile coping. While it may be said that the use of the abbreviation "etc.," is significant and indicates the inclusion of all other material provided for in the specification "mason work," it follows the words, "setting cut stone," which is the only reference therein to the performance of labor, and we think may fairly be said to thus include the labor to be performed on the material not so furnished. As thus construed, the contract is not ambiguous and the rights and liabilities of the parties must be determined as therein stated.

The plaintiff admits that he was properly chargeable with $4,912.67 for money paid him and for brick, sand, gravel, lime, cement and certain other items, paid for him by the defendant. This left a balance due him of $1,503.33, to which the trial court added $168.55 for extras. We think this allowance justified by the proofs. But while concluding that defendant has no right to charge plaintiff with the amount paid by him for the iron work, cut stone and ceramic floors, we are of the opinion that the item of $380 for concrete floor and furnace foundations in the basement is properly chargeable to plaintiff, as such work is particularly included in the specification and in no way excepted in the contract as we have construed it.

We are also impressed that the claim of defendant of $100 for reduction in cost by reason of a change in the cornice should be allowed. That such a change was made is admitted by plaintiff. The defendant swears positively that a saving thus resulted to plaintiff and that it was agreed that $100 should be de-

ducted from the contract price on account thereof. The plaintiff does not deny that the change resulted in a saving to him of the amount claimed, and in reply to a question as to whether the matter was discussed between him and defendant answered, "I can't remember." We have examined the evidence bearing on the other items in dispute, which are not foreclosed by the construction we have given to the contract, and agree with the trial judge as to the disposition made of them by him.

From the $1,671.88 found due the plaintiff by the trial court will be deducted the sum of $480 herein allowed to defendant, leaving a balance due plaintiff of $1,191.88, to which should be added $109.90, interest at 5 per cent. from July 23, 1917, to the date of the decree, May 17, 1919, in all $1,301.78. The decree will be modified accordingly, and as thus modified affirmed. The defendant will recover costs of this court.

MOORE, C. J., and STEERE, BROOKE, FELLOWS, STONE, CLARK, and BIRD, JJ., concurred.