ROOSEVELT PARK PROTESTANT REFORMED
CHURCH *v.* LONDON.

1. CONTRACTS—PAROL EVIDENCE—ADMISSIBILITY.
   Parol evidence is admissible to show that a written contract is
   void, or not of binding force, but inadmissible to prove that
   the contract was intended to mean something different from
   what its language imports.

2. SAME—CONSTRUCTION—AMBIGUITY—PAROL EVIDENCE.
   Where an agreement is reduced to writing, and there is no un-
   certainty as to the extent of the obligation assumed by each,
   all parol agreements or understandings are merged in it, and
   extrinsic evidence is not admissible to explain its meaning or
   determine the construction which shall be placed upon the
   writing.

3. REFORMATION OF INSTRUMENTS—LAND CONTRACTS—BURDEN OF
   PROOF—EVIDENCE.
   In suit to reform contract for sale of land to plaintiff church,
   plaintiff failed to sustain its burden of proof to establish by
   convincing evidence that the contract signed by it was never
   intended to be binding upon either of the parties where it is
   shown the vendors had nothing to do with the preparation of
   the contract, negotiations for its consummation had been
   pending for months, individual members of the congregation
   were relieved from liability in case of default and a serious
   attempt to fulfill it was made by regular payments over a
   period of five years.

Appeal from Kent; Brown (William B.), J. Sub-
mitted April 9, 1940. (Docket No. 65, Calendar No.
41,061.) Decided June 3, 1940.

Bill by Roosevelt Park Protestant Reformed
Church, a Michigan nonprofit corporation, against
Derk London and others to reform a land contract,
for an accounting and other relief. Decree for plain-
tiff. Defendants appeal. Reversed.

*Fred P. Geib* and *Clem H. Block,* for plaintiff.

*Linsey, Shivel, Phelps & Vander Wal,* for defendants.

Sharpe, J. Plaintiff is a nonprofit religious corporation organized and existing under Act No. 327, Pub. Acts 1931 (Comp. Laws Supp. 1940, § 10135-1 *et seq.,* Stat. Ann. § 21.1 *et seq.*), and is located in the city of Grand Rapids. The defendants are residents and citizens of Grand Rapids and are the vendors in the land contract executed March 24, 1932, which is the subject of the present controversy.

It appears that on December 1, 1925, the Londons acquired title to a parcel of land upon which was situated a dwelling house. Title to this property was taken in the names of Jelte London and Abbie London, husband and wife with the right of survivorship, an undivided one-half interest, and Derk London and Mary London, husband and wife, with the right of survivorship, grantees.

In December, 1925, the Londons applied for a building permit from the city of Grand Rapids to build a garage and subsequently a building was erected upon the premises which could be used for a garage. In March, 1932, a land contract was entered into between the Londons as vendors and the church as vendee. The agreed purchase price was $15,500 with a down payment of $1,000, the same being a donation of Derk London. The contract provided for monthly payments of $100 and "It is further mutually agreed that first parties in this contract shall not hold any of the members of the congregation liable in case said congregation should forfeit their contract to first parties." The last payment made on the land contract was in December, 1938. On January 1, 1939, there was a balance owing on the

contract of $13,837.28.  February 28, 1939, the church notified the Londons of its intention to surrender the contract and offered to pay rent instead of making payments on the contract.  The Londons refused this offer and began an action in the Kent circuit court for the collection of the past due payments on the land contract.  The church filed an answer to this declaration and on July 18, 1939, filed a bill of complaint in the chancery court in which it is alleged that the contract does not contain the entire agreement nor the true agreement between the parties.

"Plaintiff avers and charges the truth to be that the facts and circumstances out of which the actual contract between said parties arose and the actual contract itself are, in substance, as follows:

"(a) The congregation, later incorporated under the name of plaintiff herein, was formed in 1926. Defendant Derk London became a member of said congregation and shortly thereafter became the principal financial contributor toward the maintenance of said congregation, and was elected an elder.  At about that time defendants herein had had erected and were the owners of a building located on the property described in the above contract, which building had been erected as a garage building and was located on Roosevelt avenue, a short distance south of Grandville avenue in said city of Grand Rapids. Said Derk London offered the use of said garage building as a place of worship for said congregation, and an arrangement was made whereby said congregation rented said property from said London. There was no written lease, and the use of the building was, in substance, a donation from said London to said congregation by reason of the fact that said London paid as much or more toward the expenses of said congregation as the rent of said building.

"(b) The rental of said building in the manner indicated continued until about January 1, 1932.  At that time said Derk London held the office of an elder

in said congregation and was a member of the consistory, being the governing body, and, in effect, the board of trustees of said congregation and of any property possessed by said congregation. Said Derk London at that time suggested and proposed to the consistory that the congregation buy said property. Said congregation at that time consisted of 25 or 30 families, nearly all of whom were working men's families, all of whose wages had been cut and a number of whom were entirely out of employment. Said London represented to said consistory that if the congregation would purchase said property and use it for church purposes, it would be tax exempt under the laws of the State and would save him a substantial amount in taxes; that if said congregation would purchase said property at his price, he would continue his contributions toward the church, which at that time approximated $20 per week, in addition to the payment of fuel and light bills; that, unless said congregation would purchase said property at his price, the congregation would have to find a new place to worship; that if the congregation would enter into the proposed contract, it would not be regarded as binding upon the congregation if at any time thereafter the congregation could better itself by changing its location or acquiring another property, and said London then proposed a price of $14,000 for the property, to which he then and there proposed adding the sum of $1,500, by reason of the fact that he had theretofore purchased and installed, largely or entirely at his expense, a pipe organ at an expense of $1,500. Certain members of the consistory then and there reminded said London that the country was in the midst of a depression; that even if the property had cost said London the amount for which he demanded a contract, the property could not then be sold for any such sum and was not worth half of said sum; said London replied in substance that the transaction was not a business transaction in any event and that the contract meant nothing and would mean

nothing in case the congregation could at any time in the future better itself by means of a change in location and that in the meantime he would be relieved from the payment of taxes which otherwise he would be obliged to pay.  Upon said representations being made to said consistory, and said consistory being practically and financially powerless to do otherwise than as said London requested, said consistory agreed to recommend that the congregation assent to said contract.

"(c) Plaintiff avers that said Derk London appeared at said consistory meeting and participated in its activities and procured its recommendation to the congregation; that the other defendants herein did not appear at said meeting, but were then and there represented by said Derk London and at all times and in all things been represented by said Derk London and accepted and assented to the transactions and agreements which said Derk London made, and plaintiff avers that said defendants are now estopped to deny that said Derk London then and there represented them and was authorized to represent them as their agent, and plaintiff avers that said defendants have in all things and at all times ever since fully ratified the actions and doings of said Derk London in the premises.

"(d) Plaintiff further avers that after said consistory meeting, said consistory did, in accordance with its agreement with said Derk London, recommend to the congregation of said church that the London contract be entered into; that at said congregational meeting to which the recommendation of said consistory was submitted, said Derk London was present; that substantially the same representations and statements were made to the congregation by said Derk London that had theretofore been made by him to said consistory, and that thereupon, and in reliance upon the promises, statements and agreements of said Derk London, the land contract herein involved was duly

authorized and duly executed by the properly constituted officials of said congregation; that, in connection therewith, and for the purpose of giving added legal form to said contract, said congregation was duly incorporated under the laws of Michigan and executed said land contract in its corporate capacity.

"(e) Plaintiff further represents that, shortly after the execution of said land contract, said Derk London discontinued his financial support of the church, or reduced it so that it was merely nominal; that as a result, plaintiff could not make its payments upon said land contract according to the terms of said contract, but that nothing was done to forfeit said contract by defendants herein."

The relief prayed for is a cancellation of the contract. The trial court heard both the law and chancery cases and at the conclusion thereof determined that it was the intention of the parties to the contract at the time the contract was signed that at any time the church desired to vacate the premises it was at liberty to do so; and that, upon so doing, the only obligation the church would have would be the obligation to pay rent for the use of the premises for the time it occupied the same.

Defendants appeal and contend that any parol statements made by defendants were merged in the written contract; that the surrender of a land contract must either be in writing signed by the party to be bound thereto or by operation of law; that the statute of frauds prevents an oral forfeiture of a land contract; and that any statements made by defendant Derk London are not binding upon the other vendors.

The record shows that as early as 1929 the question of purchasing the London building was under discussion. A church meeting was held February 17, 1932, and the clerk made the following record of the action of the congregation:

"Article 2. The president makes known (1) (a) the offer of Mr. London, namely, to sell the building for the sum of $14,000 and the donation of $1,000 at the time the deal is closed; (2) that if the congregation should desire to buy the building it would be advisable to incorporate as congregation first; (3) if the congregation proceeds to accept these two points, to unite the existing debt of the organ with the building debt if the congregation so desires. Article 3. The following motion is made, first, to incorporate as congregation; second, to buy the church building for the sum that has been mentioned and the condition included, and finally, to unite the existing organ debt with the building debt. This motion is supported and after the matter is discussed, the matter is voted on and accepted. 18 for the motion; 6 against."

It is urged by plaintiff that the written contract entered into was only a sham for the express purpose of providing a vehicle by which the Londons could take the property off the tax rolls and thereby save $300 a year in taxes. Plaintiff introduced evidence to sustain its theory of the case.

In *Atwood* v. *Gillett*, 2 Doug. (Mich.) 206, 218, the rule is stated to be that:

"Where parol evidence is offered to show that the written contract is void, or not of binding force, it is admissible; but if the object be to prove that it was intended to mean something different from what its language imports, it is inadmissible."

See, also, *Bush* v. *Merriman,* 87 Mich. 260; *Cutler* v. *Steele,* 93 Mich. 204; *Church* v. *Case,* 110 Mich. 621.

It is urged by the defendants that statements of the type relied upon by the church are merged in the written contract and cite *Boston Piano & Music Co.* v. *Pontiac Clothing Co.,* 199 Mich. 141, where we said:

"The rule is elementary that negotiations preliminary to the execution of a written instrument may

not be received to change or vary its terms. Such negotiations are merged in the written contract. When parties put their engagements in writing, such writing is the evidence of what their engagements are."

In *Quisle* v. *Brezner*, 212 Mich. 254, the court said:

"The law in this State is well settled that where an agreement is reduced to writing, and there is no uncertainty as to the extent of the obligation assumed by each, all parol agreements or understandings are merged in it, and extrinsic evidence is not admissible to explain its meaning or determine the construction which shall be placed on the writing. *Grand Rapids Wood Finishing Co.* v. *Hatt*, 152 Mich. 132; *Wenzel* v. *Kieruj*, 168 Mich. 92; *Boston Piano & Music Co.* v. *Pontiac Clothing Co.*, 199 Mich. 141. To permit the reception of parol evidence would defeat the very object sought to be accomplished by reducing the agreement to a written form."

See, also, *Danto* v. *Charles C. Robbins, Inc.*, 250 Mich. 419; *Taylor* v. *Ward*, 264 Mich. 118.

We find no conflict in the law as above enunciated. The burden of proof is upon plaintiff to establish by convincing evidence that the contract signed by it was never intended to be binding upon either of the parties. In our opinion, plaintiff has failed to make such a showing. The record shows that the Londons had nothing to do with the preparation of the contract. The contract was prepared by Mr. Bauma who was asked by the church to look after its interests. The record is replete with evidence that negotiations were in progress for months concerning the purchase of the building. The record of the meeting held February 17, 1932, as above mentioned, is convincing that the church entered into the contract as is contended for by defendants. In addition a proviso was put into the contract relieving each member from any

liability in case of default in the terms of the contract. It is to be noted that such a proviso was totally unnecessary if plaintiff's theory of the contract is correct. It is inconsistent with the claim that the contract was to be only a sham; moreover, there was a serious attempt to make payments upon the contract in accordance with its terms from its inception up to and including December, 1938.

The decree of the circuit court is reversed, the bill of complaint dismissed. Defendants may recover costs.

Bushnell, C. J., and Potter, Chandler, North, McAllister, Wiest, and Butzel, JJ., concurred.