## ISAAC TOMPKINS v. GARDNER & SPRY COMPANY.

*Sawing contract—Expense of inspection of lumber—Construction of written contract—Evidence.*

1. Where, under a contract for manufacturing lumber at a mill situated on a logging railroad some distance from the station on the railroad over which the lumber was to be shipped, rendering it necessary to go to said station to leave orders for cars and to deliver to the station agent the way-bills, when an engine was sent for the loaded cars, the title to the lumber passed as soon as manufactured, and it was to be loaded on the cars at the expense of the manufacturer, the ordering of cars and delivery of way-bills is not covered by the agreement for such loading.

2. Where under a sawing contract the lumber was to be tallied when loaded upon cars, by a competent man, to be agreed upon by the

parties, and delivered aboard the cars free of expense to the owner, who became such prior to such loading, and, when shipped, lumber not of the proper grade was to be piled back with that of its own grade, the expense of such *latter* inspection is to be borne by the manufacturer, under his agreement to load the lumber free of expense to the owner.

3. It is the duty of courts and not juries to construe written contracts, and define what is and what is not within their terms.

4. It is not the province of witnesses to construe a written contract where no technical terms are used.

5. A *private* memorandum made by one party of the differences arising on an attempted settlement is not admissible in evidence in a suit involving the subject-matter of such attempted settlement.

Error to Mecosta. (Fuller, J.)  Argued February 2, 1888. Decided March 2, 1888.

*Assumpsit.*  Defendant brings error.  Reversed.  The facts are stated in the opinion.

*Glidden & Bates,* for appellant.

*E. F. Dewey* and *J. H. Palmer,* for plaintiff.

CHAMPLIN, J.  In May, 1883, the plaintiff entered into a contract with defendant to cut and manufacture into lumber all the pine timber situated upon certain land therein described, and to sell said lumber, together with certain lumber already manufactured at the plaintiff's mill, for which defendant was to pay $13 a thousand feet.  The contract provided for cross-piling the lumber by the plaintiff, who further agreed—

" To load on board cars at the railroad siding of the C. & W. M., situate on section 4, town 14 north, of range 11 west, Newaygo, Michigan, all lumber included in this contract, free of expense to said party of the second part, and as said second party may from time to time direct, with reasonable dispatch after cars are provided; the said lumber to be loaded in a good, workman-like manner, and to be properly secured by stakes and cross-pieces.  Said party of the second part agrees to furnish shipping directions for said lumber to said

party of the first part, within a reasonable time after said lumber shall have become in a good shipping condition, and not to exceed 90 days after the whole is cut and piled."

It was further agreed that—

" When said lumber shall be shipped, such lumber as shall not be of the proper grade shall be laid out, and piled back with lumber of the same grade;    *    *    *    that an accurate tally of said lumber shall be made and kept by a competent man, who shall be agreeable to both parties, when loaded on cars, and that aggregate amount of lumber, as shown by such tallies, shall be the basis for final settlement."

The contract did not include lumber of the grade known as " mill culls."

The contract stipulated that the title to the lumber included in the agreement should pass to defendant as soon as sawed, should be insured in its name, and each party should pay one-half of the cost of insurance.    The lumber delivered was all paid for if certain items claimed by defendant to have been paid for inspection of the lumber were proper to be applied as offset.    The plaintiff claimed that he was entitled to recover, in addition to the contract price, for certain services rendered defendant in and about the carrying out of the contract, for ordering cars in, and for billing them out.

It appears that the place of delivery named in the contract was not at a regular station of the Chicago & West Michigan Railroad, but was upon what was known as a "logging railroad," constructed for the convenience and accommodation of lumbermen, and no station agent was kept at the place where the lumber was to be shipped.    This made it necessary for parties wishing to ship lumber on board of cars on the logging road to go to Woodville, the nearest station on the railroad, and leave orders for cars to be placed in at the point of shipment, and to make out the shipping-bill or way-bill of the cars, and deliver it to the station agent at Woodville, when an engine would be sent for the cars.    Plaintiff claims

that his contract with defendant did not cover these services, and that they were performed at the request of defendant. On the contrary, the defendant claims that, under the clause in the contract requiring the plaintiff to load the lumber on board of the cars free of expense to defendant, the plaintiff was obliged to perform these services without expense to the defendant.

This contention raises the question as to the proper construction of the contract in this respect. The loading on the cars was not essential to a delivery so as to pass the title, which, by the contract, vested in the defendant as soon as manufactured. The plaintiff's engagement was to load the lumber on the cars, with reasonable dispatch after the cars were provided. The plain inference is that the cars were to be provided by the defendant. When so provided, the plaintiff must take the lumber from the piles, and load it upon the cars, subject to tally and inspection, as will be noticed further on. The expense of doing so the plaintiff agreed to bear himself. Procuring the cars and billing them out had no connection whatever with the labor of loading the lumber upon the cars or the tally and inspection under the contract, and the judge should have so instructed the jury. That he did not do so is not an error of which the defendant can complain.

The defendant charges plaintiff with $133 paid to inspectors for inspecting and grading the lumber before it was loaded upon the cars. It introduced testimony tending to prove that such money was paid at plaintiff's request, and it became a question whether such expense was to be borne by the plaintiff under the contract. The plaintiff agreed to saw all lumber included in the contract, in a good and workmanlike manner, and according to directions of defendant, piling such grades separately as might be designated by defendant from time to time; and in case such directions were not given in due season, then the plaintiff was to use his best

judgment in regard thereto. This designation as to grades was to be made before the lumber was cross-piled, and in season not to hinder or delay the sawing and piling. The term "grades" evidently referred to the quality into which lumber is classified, and the contract requires that like qualities shall be piled together. Inspection is for the purpose of ascertaining whether any error has been committed in grading the lumber. The question to be determined is whether this error was to be ascertained before the lumber was loaded on the cars, for at that point the undertaking of the plaintiff ended.

As before stated, it was mutually agreed that an accurate tally of the lumber should be made and kept by a competent man, who should be agreed upon between the parties, when it was loaded upon the cars; and by another clause, already referred to, it was agreed that, when the lumber was shipped, such lumber as should not be of the proper grade should be laid out, and piled back with the lumber of the same grade. It is clear from these clauses that the man who tallied the lumber on the car as it was loaded should inspect it as well, and, if there had been any error in the grading, such lumber was to be rejected from the lumber being loaded, and piled with its proper grade. The reason for this is too obvious to require comment. The expense of the man who did this tallying and inspection was, under the contract, to be borne by the plaintiff, as it is covered by the clause requiring him to load the lumber on the cars free of expense to defendant. The court should so have instructed the jury. Instead of doing so he submitted it to the jury, and instructed them that it would be their duty to ascertain whether the pay for this inspection was provided for in this contract, or not.

It is the duty of courts and not juries to construe written contracts, and define what is and what is not within their terms. Neither is it the province of witnesses to construe a

written contract where no technical terms are used, and the court did not err in excluding the testimony of defendant's witness as to the meaning, or as to what was included in the clause of the contract, wherein it is agreed that plaintiff will load the lumber on the cars free of expense to defendant.

The memorandum forwarded by the agent, Wood, to his principal, was properly excluded.[1]

The other errors assigned are not of sufficient importance to require comment.

The judgment must be reversed for the error pointed out, and a new trial granted.

The other Justices concurred.

———————

[1] This was a memorandum made by defendant's manager on his book, purporting to show the differences developed in an attempted settlement between him and the plaintiff.