## WENZEL v. KIERUJ.

1. CONTRACTS—BUILDING CONTRACTS—CONSTRUCTION.

   Under the provisions of a contract to install heating apparatus in a church as specified therein, plaintiff to cover all pipes underground so as to protect them from freezing, he was not bound to cover pipes under the church but not underground, and work done in protecting such pipes at the request of the architect was an extra.

2. SAME—TRIAL.

   The construction of the writing was for the court, not the jury.

3. SAME—PAROL EVIDENCE—PRIOR NEGOTIATIONS.

   Parol agreements and statements made prior to the execution of the written instrument could not be shown to vary its terms.

4. SAME—SUBSEQUENT AGREEMENT.

   But plaintiff was entitled to have submitted to the jury his claim, which was supported by testimony, that defendant and its architect authorized him to protect the pipes after the execution of the contract, and agreed to the charge therefor as an extra.

Error to Wayne; Rohnert, J. Submitted November 7, 1911. (Docket No. 57.) Decided December 29, 1911.

Assumpsit in justice's court by Paul Wenzel against Felix F. Kieruj for work done for defendant. On appeal to the circuit court the cause was tried by a jury. Judgment for defendant. Plaintiff brings error. Reversed.

*May & Dingeman*, for appellant.

*McIntyre & Wheeler*, for appellee.

STONE, J. This is an action of assumpsit, in which the plaintiff seeks to recover the sum of $135 for alleged extra work for covering the steam pipes under St. Francis Church, in the city of Detroit. The plaintiff has for many years been engaged in the business of plumbing and steam fitting. In 1904, the congregation of said church determined to erect a church and school, and Kastler & Hunter, architects, were selected to prepare plans and specifications, and to ask for and receive bids for the work. Among the bids received was the one from the plaintiff for steam fitting, which was accepted, and a contract was signed by the parties. The plaintiff claimed and testified that the contract was left in possession of Mr. Kastler, who was the supervising architect in control of the work, and that plaintiff never had a copy. It is the claim of the plaintiff that under the specifications on which his bid was figured there was no obligation on his part to cover the steam pipes under the church with asbestos. He testified that Kastler called him up and told him to cover these pipes (which were under the church, but not under the ground), and, when told by the plaintiff that it would be extra, Kastler said:

"Go ahead and do it, and we will take the matter up later on. Go on with the work; they have got to be covered."

Plaintiff claimed further, and offered testimony tending to show, that both Kastler and the defendant stated that

the pipes would have to be covered, and that the work would be paid for as extra. This is denied by the defendant, who contended that the covering of these pipes under the church was included in the original contract, and that the work should not be allowed as an extra. If there is liability, it was conceded that the defendant was the proper party to be sued.

The testimony tended to show that the contract between the parties was lost, but the specifications (Exhibit A) read in part as follows:

"Specifications for Heating St. Francis Church.

"Radiators: The church will be heated with radiators in the sanctuary, sacristy, vestibules and choir, the house and boiler house with radiators, to heat the church 60 degrees in zero weather; remainder of radiators throughout house and boiler house to be heated to 70 degrees in zero weather.

"Pipes Underground: To be thoroughly protected from freezing must be deep enough to be boxed in wooden boxes 3' larger than pipe, pipes must be covered with magnesia and felt, enough to afford good service. The putting in of heating apparatus must be done complete in every respect by the heating contractor; all necessary tools for boiler, etc."

"The covering pipes underground may be done with crock of sufficient sizes."

The undisputed evidence was that the work sued for was worth $135. The case was submitted to a jury by the trial judge, and resulted in a verdict and judgment for the defendant. The plaintiff has brought the case here on writ of error, and the 10 assignments of error all relate to the charge of the court.

The appellant states that there are really two questions in the case: (1) Did the original contract and the specifications require the plaintiff to cover with asbestos the pipes under the church? (2) If not, did the parties subsequently make an additional contract covering this work?

Counsel for appellant urge that the first question is entirely one of construction; that the contract which the

parties signed must be held to include the specifications for the work, and therefore must be construed together; that, in the absence of any ambiguity, it was the duty of the court to construe these instruments, and to instruct the jury as to their extent and governing force, citing *Tompkins* v. *Gardner & Spry Co.*, 69 Mich. 58 (37 N. W. 43); *Douglass* v. *Paine*, 141 Mich. 485 (104 N. W. 781).

It is further claimed that in considering the terms of the heating specifications, and applying to the words their plain and ordinary meaning, there is nothing that obliged the plaintiff to cover the steam pipes *under the church*, the obligation being to cover the pipes *underground* to prevent their freezing; and there is no claim that he failed to do the latter.

It is conceded that the second question was one of fact, in which the plaintiff claimed a subsequent oral contract, authorizing him to cover the pipes and agreeing to pay him for the work as an extra; and the plaintiff claims that he was entitled to go to the jury on the question, under proper instructions. The appellant urges that the trial judge ignored this phase of the controversy, and failed to present the question to the jury.

The following is the substance of the charge, and error is assigned on the portions numbered and inclosed in brackets:

"1. [If you find that it was mutually understood between the parties, before the contract was signed, that the specification included the covering of those pipes, then he is not entitled to a verdict, and your verdict must be for the defendant, no cause of action.]

"2. [If you find that in the discussion from the parties, or from the circumstances as they appear prior to the time of the execution of the contract, that it was mutually understood between the parties that the covering of the pipes was within the specifications, then you will consider whether or not the plaintiff was told by Mr. Kastler, before he covered the pipes, that it was included in the contract, and was not to be an extra. If you find that he was told so, and did the work with the statement

that it was, to be within the contract, then your verdict will be for the defendant, no cause of action.]

"3. [But, if you find from the testimony that he was not told, then it is up to you to determine whether or not, within the terms of the contract, it became necessary that those pipes should be covered in order to make it the guaranty which the plaintiff embodied as a part of his contract.]

"The guaranties in the contract were that the radiation should be what was specified in the contract, and it was so understood that there should be that much radiation, and the pipes covered by the plaintiff, for which he sues. If you find that that radiation specified would not heat the church in accordance with his guaranty, namely, heat the church to a temperature of 60 degrees and the house and boiler room 70 degrees when the temperature was zero outside, then it would be necessary for the plaintiff, either to add additional radiation in the building, or else to provide, by covering the pipes, or by other means, sufficient protection to the steam to prevent condensation, and to bring the radiation in the building up to the amount required. If you find that it became necessary to cover those pipes in order to bring up the radiation in the church to the amount specified in the contract, it became necessary to cover those pipes for that purpose, the plaintiff cannot recover.

"4. [Again, if it was guaranteed in the contract that the system would carry radiation in the building, such as would heat all of the premises to a temperature of 70 degrees when the temperature outside was 10 degrees below zero, and if you find that that system as installed, taking it for granted that you find the covering was not specified in the contract or specifications, if you find that the system as installed would not carry a radiation in the building to a degree of temperature of 70 degrees when the temperature outside was 10 degrees below zero, without covering the pipes, then it became necessary for them to be covered, and he is not entitled to recover.]

"If you find that the plaintiff is entitled to recover, you will allow him a reasonable charge for the work, and add thereto interest from January 1, 1905, 4 years and 2½ months, would be 21 per cent., in addition to the amount you find. If you find for the defendant, it is no cause of action. You will understand, gentlemen, that there are three propositions which you are to consider.

"5. [If you find in favor of the defendant on any one of them, your verdict must be for the defendant, no cause of action. The first one is, Was it contemplated or understood mutually between the parties, before the contract was signed, that they were to cover these pipes, and that they were included within the terms of the contract?]

"If it was so understood, then the plaintiff cannot recover. The second proposition is, Was it stated before the pipes were covered that this work was to be part of the work to be done as a part of the contract, and would not be an extra, and did the plaintiff do it under that statement?

"6. [And the third question is, Was it necessary that these pipes be covered in order that the radiation guaranteed by the contract should be sustained? If you find that it was necessary to cover these pipes in order to give the necessary radiation within the terms of the contract, then the plaintiff cannot recover.]

"7. [As I stated, the guaranties in that contract required the plaintiff to install a plant with radiation provided for in the radiators; that it should carry a heat of 60 degrees in the church and 70 degrees in the other buildings when the temperature was zero outside. Also that the system should be such that sufficient radiation could be added by the installing of large radiators, so that the system would carry a temperature of the degrees specified in all places to be heated when the temperature outside was 10 degrees below zero. If it was necessary to meet that that these pipes should be covered, it became the duty of the plaintiff to cover them. If you find for the plaintiff on that proposition, it will be necessary for you to also find for him on the other proposition. I hope I make myself clear.]

"*Mr. May:* I should like to say that I think the jury should be instructed that, as a matter of economy, if this was put on as a matter of economy, that it would not preclude us from recovering.

"*The Court:* 8. [If the guaranty as to radiation could be made without crowding the boiler, that was all that was necessary; you cannot allow them to demand anything which was not reasonable. Of course, experience teaches us that in cold weather you will have to have more fire in the furnace, but the guaranty is expected to be fulfilled without any unreasonable crowding of the boiler; in other words, that guaranty should be fulfilled by a reasonable and ordinary use of the boiler, such as would be

168 MICH.—7.

expected under ordinary circumstances in the various degrees of weather when the boiler is in use. I think that covers the proposition.]"

We are of opinion that the heating specifications should have been construed by the court, and that the jury should have been instructed as to their meaning and import, and that they did not embrace the work sued for in this action.

Error is assigned upon the following part of the charge:

"If you find that it was mutually understood between the parties, before the contract was signed, that the specification included the covering of those pipes, then he is not entitled to a verdict, and your verdict must be for the defendant, no cause of action."

Similar language was used in other parts of the charge, upon which error is assigned. This part of the charge is rendered very significant, because Mr. Kastler, the architect, testified to conversations with the plaintiff prior to the making of the contract, as follows:

"They were not mentioned in the specifications. He asked me if they would have to cover them, and I said: 'Certainly; it is exposed to the weather.' That is before he put in his figure. He had that conversation in my office when he was figuring on the work. * * * I told him it was a part of his contract; it was so understood before the contract was signed."

This part of the charge was erroneous. We understand the rule of law to be that prior mutual understandings of the parties are unimportant, when they have signed a contract covering the subject-matter, since the latter includes and covers all such prior negotiations and agreements. In *Rumely & Co.* v. *Emmons*, 85 Mich. 517 (48 N. W. 637), this court said:

"It is a well-settled rule of law that, when the parties have reduced their contract to writing, it must be presumed that the writing contains the whole of the agreement, and all parol contemporaneous agreements are merged therein."

See, also, *Cook* v. *First Nat. Bank*, 90 Mich. 214 (51 N. W. 206); *Johnson* v. *Bratton*, 112 Mich. 323 (70 N.

W. 1021). The general rule is that you cannot import into a written agreement a prior parol agreement which alters the terms or legal effect of the written agreement.

We think that the plaintiff was entitled to have fully submitted to the jury his claim, to wit, that, by a subsequent oral contract with the architect and the defendant, he was authorized to cover the pipes and charge for the same as an extra, and that the court failed to so submit it.

We have pointed out the errors which we think were prejudicial.

The judgment of the circuit court is reversed, and a new trial granted.

MOORE, STEERE, and BROOKE, JJ., concurred with STONE, J.

OSTRANDER, C. J. I concur upon the last point, namely, that plaintiff was entitled to have his claim submitted to the jury.