### CUTLER *v.* SPENS.

1. CONTRACTS—CONSTRUCTION—EVIDENCE.

It is the duty of courts, not juries, to construe written contracts and define what is and what is not within their terms.

2. SAME—RULE OF INTERPRETATION.

In construing contracts all their terms and provisions and every word and phrase should be given effect if practicable.

3. SAME—EXCHANGE.

Where the parties to a contract had executed a mortgage, a deed and a supplemental agreement on the day after entering into the principal contract, all relating to an exchange of real estate, the trial court did not commit error in construing the three instruments together as a part of one transaction.

4. SAME—JOINT PLAINTIFFS.

And the trial court did not commit error in holding that husband and wife that were party to a joint exchange were properly entitled to recover on a contract for the removal of part of a building and for payment of compensation therefor which, though not signed, was marked approved by the wife, in an action against the other person concerned in the exchange.

5. TRIAL—JURY—MISCONDUCT—NEW TRIAL.

Upon defendant's motion for a new trial in which he made it appear that one of the jurors laughed aloud while defendant was under cross-examination, where no exception was taken or attempt made to bring it to the attention of the trial court, the appellant was not entitled to reversal on error.

6. CONTRACTS—NEW TRIAL—NEWLY DISCOVERED EVIDENCE.

An affidavit of the defendant, which set up the facts to which he believed his newly found witness would testify, was insufficient and was not in compliance with the rule which requires the witness to make the affidavit.

7. SAME—TRIAL—ISSUES—CONSIDERATION.

*Held*, on review of the testimony, that plaintiffs were entitled to recover the agreed sum set up in the contract and that the trial court rightly left to the jury the question of consideration which was in dispute.

8. SAME.

Where it was stated in the deed that the grantor was to remove certain buildings and by a writing executed later the parties fixed upon a sum of money to be paid the grantees for removing the buildings, evidence that they carried out the agreement which mentioned a consideration entitled them to recover the amount named.

9. SAME—CONSIDERATION.

And under a writing wherein plaintiffs agreed to remove certain buildings on a portion of the land which defendant

had sold before he exchanged with plaintiffs, the question of consideration was a proper subject of inquiry in a suit for the price named in the contract which recited that it was entered into as a part consideration of the deed. It was not inconsistent with the prior conveyance whereby the defendant contracted that he was to remove the buildings.

Error to Wayne; Lamb, J., presiding. Submitted April 10, 1916. (Docket No. 62.) Decided June 1, 1916.

Assumpsit on the common counts by Wallie Cutler and another against John Spens. Judgment for plaintiffs. Defendant brings error. Affirmed.

*Jonathan Palmer, Jr.* (*E. F. Bacon*, of counsel), for appellant.

*Jay Fuller* (*Charles C. Stewart*, of counsel), for appellee.

STONE, C. J. This is an action in assumpsit; the declaration being upon the common counts to which were attached two contracts. The contracts in the order of their dates are as follows:

Exhibit C.
"This agreement made this 15th day of October, A. D. 1913, by and between John Spens, of Halfway, Michigan, party of the first part, and Wallie Cutler and Selma Cutler, his wife, of Detroit, Michigan, parties of the second part, witnesseth: The said party of the first part covenants and agrees to and with the parties of the second part that he has on this day bargained and sold unto Wallie Cutler, and Selma Cutler, his wife, said parties of the second part, the certain property known as 'John Spens place,' of a two-story solid brick building and blacksmith shop, and three and one-half acres of land (more or less), located at Halfway, Michigan, also all stock and merchandise, scales, cases, fixtures, shelving, and counters located in said building, also one top wagon, one new delivery wagon

and one other wagon, and all farm tools belonging to said party of the first part, also one gasoline engine, and all blacksmith tools belonging to said party of the first part, and to turn over all papers from the D. U. R. in his favor for all dirt, sand, and cinders that are due him for the sum of six thousand and five hundred ($6,500) dollars. Said party of the first part does hereby agree to take deed on premises known as lots Nos. 47 and 48, located in Hamtramck and Grosse Pointe Township, Wayne county, Michigan, property located on Pennsylvania avenue (south side of street), between Jean and Edgewood avenues, with balance due on contract of $2,120, also agrees to take over the contract for lot No. 20 of Visger and Sprague subdivision of private claim 152 and lots 21 and 22 of William S. Moran's subdivision of a part of rear concession on private claim 152 in Hamtramck, now Detroit, situate on the north side of Felch avenue, according to the recorded plat thereof, and agrees to allow parties of the second part $1,839.29 on said described property, and agrees to pay contract of $1,-660.71 balance due on said contract to Elizabeth Wurm, and he further agrees on delivery of warranty deed of his property to take mortgage of $3,050 for five years from date hereof at six per cent. (6%) interest, payable semi-annually, and said parties of the second part have the privilege of paying any amount they see fit at the time of paying interest on said mortgage, and on delivery of this mortgage on the 16th day of October, 1913, party of the first part is to deliver a warranty deed to said parties of the second part, also $500 in cash when parties of second part remodel or move said brick building if they need $500 more, the said party of the first part will loan them said $500 more on completing their work, also at the rate of six per cent. (6%) interest. Said parties of the second part do this day sign over to the party of the first part the two contracts which are above mentioned in this agreement, and they shall be held by F. C. Heal until the warranty deed is delivered to parties at his office at No. 48 May avenue, Detroit, Michigan. The party of the first part does hereby agree to furnish parties of the second part an abstract of property at Halfway, Michigan, as soon as same can be brought up to date,

and said parties of the second part also agree to do the same with property turned over to the party of the first part."

Exhibit A.
"October 16, 1913.
"Halfway, Macomb County, Michigan.

"$500.00
"Subject to all conditions mentioned herein, due to Wallie Cutler, five hundred dollars upon removal by him or his agents on or before May 1, 1914, of all buildings or parts of buildings standing on the right of way heretofore sold by me to the Rapid Railway Company; said removal to be made in full compliance with the terms of a certain bond given by me covering said removal.

"If not removed by said Cutler or his agents before May 1, 1914, then I am to remove said buildings or parts thereof by tearing them down or otherwise as I may see fit and placing them or the debris on his land adjoining said right of way and this day sold by me to him, and retain the aforesaid $500.00 as my compensation therefor and as stipulated damages to me, and he is to make no claim for damages to remainder of building or buildings caused thereto by the tearing down of parts thereof standing on the railway's right of way purchased from me.

"JOHN SPENS.
"WALLIE CUTLER.
"The above is satisfactory to me.
"SELMA CUTLER."

The plea was the general issue with notice of counterclaim. The following statement may aid in understanding the facts involved:

Shortly prior to October 15, 1913, the plaintiffs were introduced to the defendant, who desired to sell some property at a place called Halfway, between Detroit and Mt. Clemens. It appears that the plaintiffs had no money, but had equities in Detroit properties, and negotiation was finally entered into by the parties by which plaintiffs' equities were turned over to the defendant in exchange for his property. A difference

of $2,550 was to be made up by a mortgage from plaintiffs to defendant. The defendant was also to advance or loan to plaintiffs $500, and the mortgage was to be increased by that amount, and was to stand for $3,050. This arrangement was evidenced by Exhibit C, above set forth. It also appeared that before trading to the plaintiffs the Halfway property the defendant had sold and conveyed a strip of land adjoining the property traded to plaintiffs to the Rapid Railway Company, and this right of way or strip sold to the railway company included a portion of a brick building which the defendant had agreed with the railway company to remove, and to assure the removal had given a bond that such removal should be made on or before July 1, 1914.

It is the claim of the plaintiffs that it was agreed by and between the plaintiff Wallie Cutler and the defendant that, if Cutler would remove said building from the right of way before May 1, 1914, defendant would pay him $500 for such labor, and that the plaintiff Selma Cutler assented thereto, which was the occasion of the making of the agreement of October 16, 1913, known as Exhibit A.

It further appeared that on said October 16, 1913, the defendant and his wife conveyed the said Halfway real estate to the plaintiffs, for an expressed consideration of $1 and other good and valuable considerations to them in hand paid. After the description of the premises conveyed the deed contains this language:

"As a part consideration of this deed, second parties are to remove all buildings now standing on the land sold by first parties to the Rapid Railway Company on or before May 1, 1914. Should second parties not remove said buildings or parts thereof within the time specified, first parties retain the right to enter on the premises hereby conveyed and tear down and remove from the railway right of way the aforesaid buildings or parts thereof standing on said right of way, and

place debris on the aforesaid lands, and shall not be liable for any damages caused to the remainder of the buildings left standing on the land hereby conveyed."

The principal issue in the case upon the trial was whether the plaintiffs were to receive $500 for removing the building from the right of way strip of land, or whether it formed a part of the consideration of the deed. The evidence was undisputed that the plaintiffs removed the buildings from the right of way before May 1, 1914, and that it cost them more than $500 to do so, and that they demanded payment of the defendant about May 18, 1914, by letter. The record does not contain any bill of particulars of the plaintiffs' demand, but there was evidence pro and con whether the defendant was also indebted to the plaintiffs for the value of certain blacksmith's tools which it was claimed the defendant agreed to turn over to them in the trade, but did not, the value of which was claimed by the plaintiffs to be $150. Also there was a further claim of the plaintiffs of $46 for the value of some furniture sold to defendant; also $50 for the value of a fireproof safe, and some butcher's tools which plaintiffs were to have in the trade, which on demand were not turned over to them by the defendant; also a further claim by plaintiffs for taxes of 1913 upon the Halfway real estate which plaintiffs paid and defendant agreed to repay, but did not, amounting to $57.93. The plaintiffs claimed the further right to recover for the value of a certain board partition which was in the upstairs of the building, which was not delivered to them, amounting to $15. The testimony relative to said five items presented purely questions of fact which were properly submitted to the jury.

The mortgage given by the plaintiffs to the defendant, bearing date October 16, 1913, was put in evidence by the defendant. Its effect was to complicate

the issue. It was given for $3,550 instead of $3,050.
Referring to this mortgage the defendant upon cross-
examination testified as follows:

"*Q.* Exhibit E is a mortgage from Wallace Cutler
and Selma Cutler, his wife, to John Spens. How much
cash did you give them on that mortgage?

"*A.* $500. That is all.

"*Q.* And the $2,550 is the difference in exchange of
the two properties; you have no other claim on them?

"*A.* No, not on them. I still own that mortgage.

"*Q.* You only claim $3,050 and the interest accrued
since?

"*A.* That is all that I claim.

"*Q.* That is all they owe you on that mortgage, $3,-
050?

"*A.* I claim $3,550 on this mortgage; yes, I do; but
I have only charged them up the interest which they
received.

"*Q.* You still say that they owe you $3,550 on the
mortgage?

"*A.* Yes.

"*Q.* How do you make that $3,550?

"*A.* $3,550 is the $500 which I am going to loan him
after this building is moved.

"*Q.* But you haven't given them anything on that
mortgage?

"*A.* I've got the $500 which I agreed in the first
place.

"*Q.* That would make $3,050.

"*A.* Yes.

"*Q.* Now you claim they still owe you $500 on the
mortgage?

"*A.* No, sir; I don't claim that; yes, they owe me
$500 on the mortgage; yes, they owe me $3,550 on the
mortgage.

"*Q.* You still insist on that?

"*A.* Yes.

"*Q.* Tell the jury when you gave them $3,550 on the
mortgage.

"*A.* I gave them $2,550 at the time. I gave them
$500 in cash, and then there is $500 which I am sup-
posed to loan them after those buildings were moved
off, if they wanted it.

"*Q.* You never loaned that to them?

"*A.* No, I didn't have any chance to loan it to them. I was not asked for it. * * *

"*Q.* Did they ever ask you for the $500 or more?

"*A.* No, sir; they didn't ask me for any of it.

"*Q.* Yet you still insist that they owe you $3,550?

"*A.* Yes.

"*A Juror:* Ha! Ha! Ha!

"*Q.* Do you hold this for $3,550, or do you simply hold it for $3,050, this note?

"*A.* Well, I hold it for $3,550 when they loan the other $500 from me. I owe them $500 which I agreed to pay them. I never refused, and they owe me $3,550.

"*Q.* Yet they never had but $3,050?

"*A.* That is all they received. They have not asked me for the $500 yet. If they want it, I will give them a receipt for it in full; that is to pay on the mortgage if they ask for it; that is what I agreed to do.

"*Q.* The amount that you claim is due on the mortgage at the present time is what?

"*A.* $3,050."

All the witnesses who testified in the case agree that the difference in value of properties between the two parties which was to be secured by mortgage was $2,-550, and that defendant loaned plaintiffs at the time of the trade the sum of $500. As already appears by Exhibit C, there was contemplated a further loan of $500 to the plaintiffs which had never been made.

The case was submitted to the jury by the trial court in a lengthy charge, in which it referred to the items claimed by the respective parties, and the trial resulted in a verdict and judgment for the plaintiffs in the sum of $917.61, and costs. There was a motion for a new trial based upon the following reasons:

(1) Because it appeared from the files and records in the cause that the claim of said plaintiffs, mentioned in their declaration, for the sum of $500, and interest thereon, had been fully paid and discharged by defendant.

(2) Because it appeared that the claim of the plaintiffs of $500, and interest, was paid and settled by

the sale and conveyance of property in accordance with the terms of the agreement attached to, and made a part of the declaration, and therefore gave the plaintiffs no right of action therein for a recovery.

(3) Because the claim of $500, and interest, was fully covered by the terms of said agreement, and in the deed made and executed by said defendant and wife to the said plaintiffs, which deed, according to its terms, shows complete settlement of said claim as part of the consideration of the transfer of said property to said plaintiffs.

(4) Because it appears that the plaintiffs never had any claim for the payment of any additional amount of $500 under the terms of the agreement mentioned in their declaration, and that such amount was not an obligation due or owing from said defendant for which any recovery might be had herein, but was, according to the terms of said agreement, to be treated and considered as a loan by said defendant to said plaintiffs, which was to be secured by the said plaintiffs and afterwards repaid to said defendant.

(5) Because it appears from the files and records that certain taxes paid by the defendant should have been paid by the plaintiffs, and that no recovery should have been permitted herein without due credit for and allowance to the defendant for such items so paid by him.

(6) Because it appears from the files and records that the claim of the plaintiffs, if they had any claim, for the $500 item under the agreement attached to the declaration, was a personal claim in favor of the plaintiff Wallie Cutler individually, and was not a claim in which the other plaintiff, Selma Cutler, was interested, either individually or jointly with Wallie Cutler, according to the express terms of said agreement.

(7) Because it appears from the files and records in said cause that upon the trial and during the cross-examination of defendant there was misconduct on the part of one of the jurors in laughing, as indicated in the foregoing excerpt from the testimony, which it was claimed showed prejudice in the mind of said juror against said defendant.

(8) Because the court charged the jury in the following language:

"Exhibit A is a contract that was drawn by Mr. Heal. It was dated on the 15th day of October, 1913, and I think I shall permit you to take this agreement into the jury room. The other agreement upon which the plaintiffs base their claim for $500 for removing the building is dated the next day, October 16, 1913. That I shall also allow to go to you, and you may take it into the jury room, and you may use both of them in determining what the understanding was, and whether or not the plaintiffs' version as to the $500 or the defendant's story is true. I am going to allow you to take Exhibit A in connection with the other agreement, and allow you to use the two together in determining what the actual understanding was between the parties as to whether or not this $500 was to be paid for the removal of the building. In that connection you will also take into consideration and bear in mind the statement in the pleadings as to the consideration of the property, and you will also bear in mind the fact that these papers were prepared at the instigation of the defendant before they were taken away by the plaintiffs in the case."

(9) Because it appears that the verdict therein was contrary to and against the weight of evidence produced upon the trial of said cause.

(10) Because it appears from the affidavit of the defendant that newly discovered evidence was obtainable that could be produced and used upon a new trial that would show the facts set forth in the affidavit thereto attached that are material to the issue in said cause.

This motion for a new trial was denied, and the reasons for such denial were in writing, signed by the trial judge, to which defendant's counsel duly excepted.

The case has been brought here upon writ of error, and the first assignment of error is to the effect that the verdict of the jury was against the weight of the evidence.

The second assignment of error covers that portion of the charge already quoted as contained in the motion for a new trial, and additional language as follows:

"There are some matters here that are disputed, and the main item which is the subject of dispute must be determined largely by you in these papers. Now, there are two contracts here that will determine largely what your verdict should be as bearing upon the proposition of the $500."

The third assignment of error covers a portion of the language of the court in charging the jury already quoted in the motion for a new trial.

The fourth assignment of error is that the court erred in charging the jury as follows:

"Now, what the facts are in relation to these matters in dispute you have to determine from the case. Now, there are some items upon which there has been some oral testimony that I have permitted to come in here for the purpose of assisting you in determining what the actual intent of these parties was as shown by the writing."

The fifth assignment of error is to the effect that the court erred in charging the jury as follows:

"Now, there is a chance for dispute as to what these writings mean. If there was no chance for dispute, the papers would not have been open to any oral testimony at all, and that is the only purpose for which the oral testimony was permitted, so that you could have the benefit of it in determining what was understood at the time, and using it in connection with these papers in determining what the actual agreement was."

The sixth assignment of error relates to the following portion of the charge, viz.:

"If you find by the greater weight of the evidence plaintiff's claim as to this $500 has been substantiated by the greater weight of the proof, in view of all the testimony in the case he is entitled to that, together with interest at 5 per cent. from the time he got that building off, May 1, 1914."

The remaining assignments of error relate to the refusal to grant a new trial, and the reasons therefor.

1. In the argument of the case appellant's counsel first claim that the verdict was contrary to the weight of the evidence. We cannot agree with counsel in this contention. It appeared to be undisputed that the plaintiffs removed the building mentioned in the contract before May 1, 1914. Whether they should be paid for such labor depends upon the construction which should be placed upon the contracts and the dealings of the parties. We think there was evidence sufficient to support the claim of the plaintiffs, and we cannot say that the verdict was contrary to the weight of the evidence.

2. In the second and third propositions of appellant it is claimed that the court erred in its charge as stated in the assignments of error in not properly instructing the jury as to the proper construction to be placed upon the contracts, and the deed from which we have made an excerpt. The trial court, from the language used in its charge, was evidently of the opinion that there was an ambiguity in the contracts and instruments introduced in evidence, and for that reason seems to have submitted them to the jury in connection with the oral evidence. Generally speaking, the interpretation or construction of a written contract is a question of law for the court. But this rule presupposes the absence of a dispute as to the facts and the absence of ambiguities. In fact, it is generally declared that, where a contract has been reduced to writing, its construction is for the court, and that the question whether the writing is, upon its face, a complete expression of the agreement of the parties, is one of law for the court. It is certainly true, as a general rule, that the construction of written instruments belongs to the court, and not to the jury. Nevertheless there are cases in which, because of the ambiguous nature of the words used, or because of obscure references as to unexplained circumstances, the

true interpretation of the language may be left to the consideration of the jury for the purpose of carrying into effect the real intention of the parties. The general rule in this State is well stated in *Tompkins* v. *Gardner & Spry Co.,* 69 Mich. 58 (37 N. W. 43), where it is said:

"It is the duty of courts and not juries to construe written contracts, and define what is and what is not within their terms."

In the construction of contracts all their terms and agreements and every word and phrase should be given effect, if practicable. *Smith* v. *Durkee,* 166 Mich. 484 (131 N. W. 1116); *Brittson* v. *Smith,* 165 Mich. 222 (130 N. W. 599); *Thomas Electric Welding Co.* v. *Wire Fence Co.,* 190 Mich. 496 (157 N. W. 67).

We are of the opinion that the contracts, deed, and mortgage should have been construed by the court as a whole as constituting one contract, and that all of the parts of the contract should be examined to determine its meaning. We think the court might properly have instructed the jury that under the instrument known as Exhibit A, it appearing that the plaintiffs had removed the building standing on the right of way within the time prescribed, and, the consideration being conceded, they were entitled to recover the sum of $500 mentioned in that agreement, with interest thereon. The verdict shows that the jury found for the plaintiffs upon that question. If there was any error of the trial court in submitting the contracts to the jury, it was harmless error of which the defendant cannot justly complain; the jury having found for the plaintiffs upon said contract.

Should the verdict be disturbed under such circumstances? We think not, where, as here, it turns out, at most, to be an error without prejudice.

The point is also urged that the court erred in al-

lowing a recovery by both plaintiffs upon what is termed the $500 agreement. When we examine the whole case it appears that the entire transaction was a joint one between the two plaintiffs and the defendant. It appearing that the agreement was satisfactory to the plaintiff Selma Cutler, and was approved and ratified by her, we find no error in allowing a joint recovery. See *Agar* v. *Streeter*, 183 Mich. 600 (150 N. W. 160, L. R. A. 1915D, 196).

We do not think there is any merit in the point made as to the conduct of the juror in the instance pointed out. The trial court, in disposing of that question, said:

"In fact, there was nothing in the incident to cause the court to deem a reprimand either necessary or advisable, nor was the court asked by the defendant's counsel to reprimand the juror."

No exception seems to have been taken, and the court's attention was not challenged at the time to the matter. We do not think the circumstances were such as to make the ruling in *Cooper* v. *Carr*, 161 Mich. 405, 408 (126 N. W. 468), applicable, as contended. The incident was not of a serious nature, and we think the circuit judge's view of it was justified.

We find no error in the refusal to grant a new trial. Upon the question of claimed newly discovered evidence, a perusal of the affidavit of the defendant shows that it does not comply with the rule relating to newly discovered evidence. He simply stated what he believed the proposed witness would testify to, without producing an affidavit of that witness. This was hearsay, and does not satisfy the rule.

In our opinion, the only meritorious question raised by the record is whether, on an examination of the contracts, deed, and mortgage it can be said that the plaintiffs were entitled to recover the sum of $500 for the removal of the building from the right of way.

Defendant's counsel claim that the deed was the last instrument executed. We do not think that claim well founded. There is language in Exhibit A to justify the claim that it was made *after* the delivery of the deed, as it speaks of the land as "this day sold by me to him." Mr. Heal testified:

"I didn't put that in my part (Exhibit C) because they were to have an understanding about that, when they went down to close up the deal."

Referring to the language of the deed which we have quoted, it appears that the plaintiffs agreed to remove all buildings then standing on the land sold by the defendant and his wife to the Rapid Railway Company, on or before May 1, 1914, and the expression is used that that agreement was made as a part consideration of the deed. We think the question of consideration was open to inquiry. *Mowrey* v. *Vandling,* 9 Mich. 39; *Gardner* v. *Gardner,* 106 Mich. 18 (63 N. W. 988).

By the undisputed evidence in the case the consideration for the deed was the property, consisting of certain equities, conveyed by plaintiffs to the defendant, and the remaining indebtedness of $2,550 secured by a mortgage. While by the terms of the deed the plaintiffs agreed to remove the buildings, they did not agree to do so without compensation. The entire clause, when taken together, is not inconsistent with Exhibit A, and we think the jury should have been instructed by the court that under the terms of Exhibit A, it appearing undisputed what the consideration was, and that the plaintiffs had removed said building, they were entitled to recover the price agreed to be paid therefor.

Finding no reversible error in the record, the judgment of the court below is therefore affirmed.

Ostrander, Bird, Moore, Steere, Brooke, and Person, JJ., concurred. Kuhn, J., did not sit.