LONGCOR *v.* DETROIT HOMEOPATHIC COLLEGE.

1. CONTRACTS—CONSTRUCTION—AMBIGUOUS WRITING OPEN TO CON-
STRUCTION BY JURY.

> Where the language of a writing is ambiguous, the question
> of the intention of the parties may be left to the jury.

2. LANDLORD AND TENANT — CONSTRUCTION OF LEASE — QUESTION
FOR JURY.

> In an action for damages for the breach of a lease, the
> question whether the lessor was under obligation to con-
> nect with central heat in case the boiler proved inade-
> quate as provided in the lease, in view of another agree-
> ment allowing lessee $1,000 on his rent to make repairs,
> *held,* properly submitted to the jury.

3. APPEAL AND ERROR—HARMLESS ERROR.

> Where the jury reached the proper conclusion, defendant
> cannot complain because the court did not interpret the
> contract.

4. LANDLORD AND TENANT—EVICTION BARS RIGHT TO RENT—RE-
COUPMENT—EVIDENCE.

> Where defendant had evicted plaintiff, its tenant, testimony,
> under notice of recoupment, as to its damages and loss
> by reason of plaintiff's failure to pay rent was properly
> excluded on the ground that it had elected to evict plain-
> tiff.

5. SAME—EVICTION—RENT—DEFENSES.

> The eviction of a tenant from the demised premises either
> by the landlord or by title paramount, is a bar to any
> demand for rent, because it deprives him of the whole
> consideration for which rent was to be paid.

Error to Wayne; Hosmer (George S.), J. Submit-
ted April 22, 1920. (Docket No. 63.) Decided June
7, 1920.

Assumpsit by Eugene J. Longcor against the De-
troit Homeopathic College for breach of a written

On the question of partial eviction upon liability for rent,
see notes in 17 L. R. A. 275 and 41 L. R. A. (N. S.) 430.
On eviction of tenant by failure to furnish heat, see notes in
37 L. R. A. (N. S.) 1217, L. R. A. 1916E, 742.

lease. Judgment for plaintiff. Defendant brings error. Affirmed.

*Lewis A. Stoneman,* for appellant.

*M. F. McDonald,* for appellee.

BIRD, J. Plaintiff took a lease of defendant's premises at the southwest corner of Lafayette boulevard and Third street, in the city of Detroit, for a period of five years from the first day of February, 1915, for the purpose of using it as a rooming house. The rent reserved was $150 a month for the first 3 years, and $200 a month for the remaining 2 years. The lease was the ordinary short form lease, with the additional provisions that plaintiff should pay the water tax and vacate the premises in 90 days in the event of a sale thereof. A further provision was inserted, which furnishes the irritant in the case. It was as follows:

"Said first party agrees that should the heating plant in building be defective and not properly heat building, it will install central heat."

Another agreement having reference to the premises was made by the parties, which, after reciting the fact that the lease had been made and restating the rent reserved, provided as follows:

"Now, therefore, it is mutually understood and agreed that in order to put said building in a tenantable condition, it is necessary to make certain alterations in the rooms, overhaul the plumbing and steam heating plant, and rewire the whole building for electric lights, and redecorate the rooms. This will cost between one thousand ($1,000) dollars and fifteen hundred ($1,500) dollars, said first party hereby agrees with said Eugene J. Longcor, party of the second part, that said second party is to make these improvements to said building, and upon satisfactory showing that the said improvements have been made to the satisfaction of the party of the first part, said first party agrees to allow said Eugene J. Longcor,

party of the second part, the repair bills, to an amount not exceeding one thousand ($1,000) dollars."

Following these provisions the agreement provided for an application of the money expended for repairs on the rent and for certain security for the payment of the rent. Whether this agreement was executed before or after the lease was executed is in dispute. But suffice to say both were executed and plaintiff proceeded to make the repairs and afterwards received credit on his rent, as agreed. Among the repairs made, plaintiff installed new grates in the boiler and made some further repairs thereto. With these repairs the boiler was used the balance of the winter. The following winter he was obliged to use stoves as an auxiliary to the heating plant in order to make the rooms comfortable. In October, 1916, the boiler was condemned by the city inspector and plaintiff then demanded of defendant that it either install a new boiler or make a connection with the central heating system. Both requests were refused, whereupon plaintiff purchased the only available boiler he could get, and installed it, but this proved to be inadequate. Plaintiff retained the premises and paid the rent up to and including the month of January, 1918, but failed to pay the rent for the months of February and March, 1918. Defendant served notice on him to quit, and instituted summary proceedings which resulted in his eviction on April 18, 1918. Before vacating the premises he removed the boiler which he installed. After being evicted he commenced this suit, claiming that by reason of the failure of defendant to keep its agreement to connect the system with central heat he was unable to heat the house, and thereby lost his roomers and was greatly damaged thereby. The matter was submitted to the jury and they returned a verdict for him of $1,500.

1. Appellant asserts that the lease and agreement should have been construed as one paper, and the court should have construed it himself instead of leaving it to the jury to find what the intention of the parties was. Plaintiff claimed that the additional provision inserted in the lease with reference to connecting the premises with central heat made it obligatory upon defendant to connect his heating plant with central heat when the boiler failed. Defendant contended that the lease and agreement construed together relieved it of any further obligation in regard to the heating apparatus during plaintiff's term. Just what the parties meant by these writings the court was uncertain. He thought the language of the two provisions taken together was ambiguous as to this question and, therefore, left it to the jury to determine what the parties meant by the language they used, with the instruction that if they found in accord with plaintiff's contention he could recover; if they found with defendant's contention plaintiff could not recover.

We are not prepared to hold that the court was in error in leaving the matter to the jury. We agree with the court that the intention of the parties as shown by the writings is more or less hazy. It is, however, aided to some extent by the extrinsic evidence which was admitted at the trial. Aided by the surrounding circumstances, we think the construction given to it by the jury was the proper one.

It is clear that if there had been no such provision in the lease and no accompanying agreement the defendant would have been under no obligation to connect the plant with central heat. By the insertion of the provision in the lease the defendant, without doubt, obligated itself to connect the premises with central heat in the event the boiler failed. The question therefore arises whether it was the intention of the subsequent agreement to relieve it from that obli-

gation. It does not appear to us that it has that effect.
Both were agreed that repairs were necessary in order
to make the house tenantable. It was agreed some
repairs to the boiler were necessary. They agreed
that it would cost $1,500, and defendant agreed that
it would allow him on the rent $1,000 toward the re-
pairs. To provide for these repairs the accompanying
agreement was made. When these repairs were made
and accepted plaintiff was entitled to no further re-
pairs during his term except his right under the lease
to have the heating system repaired or connected with
central heat in the event that it proved inadequate.
The reason for this lies in the fact that the lease dealt
with rights which were continuing during the term
of the lease, while the agreement dealt only with re-
pairs which would make the premises tenantable at
the time of the commencement of the term. We are
unable to see anything in the agreement which would
relieve defendant from its obligation to connect the
plant with central heat in the event of its failure to
heat the premises. This being, as we think, the proper
conclusion, and the jury having reached that conclu-
sion, defendant was not harmed by reason of the fact
that the court did not interpret the contract. *Cutler*
v. *Spens*, 191 Mich. 603. The case comes within the
rule that where the language of the writing is am-
biguous the question of the intention of the parties
may be left to the jury. 6 R. C. L. p. 862, and cases.

2. Defendant attempted to introduce testimony un-
der its notice of recoupment to show its damages and
loss by reason of the failure of plaintiff to pay the
rent during the balance of the term, but this was ob-
jected to and excluded by the court on the ground
that it had elected to, and had evicted the plaintiff.
This is complained of as error. We think the ruling
was correct. It was said in *Royce* v. *Guggenheim*,
106 Mass. 201 (8 Am. Rep. 322), and approved by

this court in *Kuschinsky* v. *Flanigan*, 170 Mich. 245 (41 L. R. A. [N. S.] 430, Ann. Cas. 1914A, 1228), that:

"The eviction of a tenant from the demised premises either by the landlord or by title paramount, is a bar to any demand for rent, because it deprives him of the whole consideration for which rent was to be paid."

To the same effect is the case of *Wreford* v. *Kenrick*, 107 Mich. 389.

Defendant's counsel, in support of this assignment, his cited the case of *Stott Realty Co.* v. *Amusement Co.*, 195 Mich. 690. In that case the general rule was restated by Mr. Justice FELLOWS, and he drew attention therein to the peculiar wording of the lease which made it an exception to the general rule. As there is nothing in the lease before us which would make it an exception to the general rule, the authority cited is not in point.

The judgment of the trial court is affirmed.

MOORE, C. J., and STEERE, BROOKE, FELLOWS, STONE, CLARK, and SHARPE, JJ., concurred.