HENZE v. HUTTO.

1. CONTRACTS—PAROL AGREEMENTS MERGED IN WRITTEN CONTRACT.
    Where parties have reduced their contract to writing, it must be presumed that writing contains whole of agreement, and all parol contemporaneous agreements are merged therein.

2. SPECIFIC PERFORMANCE—PATENTS—ORAL CONTRACTS.
    Specific performance of alleged oral agreement for one-half interest in proceeds of defendant's inventions was properly denied where evidence was insufficient to establish said contract, and especially where parties subsequently executed written contract giving plaintiff one-quarter interest, which he accepted with apparent satisfaction for period of nearly six years.

Appeal from Wayne; Smith (Guy E.), J., presiding. Submitted January 8, 1932. (Docket No. 80, Calendar No. 35,616.) Decided April 4, 1932.

Bill by Paul Henze against Marsden C. Hutto and others for specific performance of an agreement respecting inventions. Bill dismissed. Plaintiff appeals. Affirmed.

*Harry J. Lippman* and *Louis Tucker,* for plaintiff.

*Guy W. Moore* and *Hal P. Wilson,* for defendant Hutto.

*Beaumont, Smith & Harris,* for defendants Carborundum Company and Hutto Engineering Company.

SHARPE, J. The defendant Hutto (hereafter referred to and spoken of as the defendant) was in the employ of the Pressed Steel Auto Parts Corporation of Bryan, Ohio, in charge of experimental work for a number of years prior to 1922. This company let a contract for the construction of pistons to the Bryan Pattern & Machine Company, and at defendant's request the plaintiff, then a resident of Detroit, went to Bryan and became superintendent of the Bryan company plant. They worked in the same factory building, and became well acquainted. There was discussion between them over the development of a tool for the grinding of pistons, and in May of that year the defendant quit his employment and rented a small shop and began experimenting on the construction of such a tool, spoken of by the witnesses as a "lapp." Plaintiff also quit his employment at Bryan in the summer of that year, and returned to Detroit. Defendant soon after followed

him, and lived in plaintiff's home for a time. A shop in the rear of the house of plaintiff's father was secured and some machinery furnished by plaintiff. A tool was finally developed, but did not prove satisfactory. Defendant continued with his experimental work, and early in 1923 one was produced which proved successful, and a patent for it was applied for by defendant.

On March 2, 1923, the defendant had prepared and submitted to plaintiff the following:

"This day these articles of agreements entered into by and between one M. C. Hutto, first party, and Paul Henze, second party.

"That said first party is the inventor of and is the holder and owner of the following inventions: The Hutto cylinder lapp. The Hutto cylinder hone. The Hutto cylinder grinder. The Hutto crankshaft lapp. The Hutto crankshaft grinder.

"That in consideration of certain money advanced by said second party to said first party, and other valuable consideration, the said first party hereby agrees and does agree to give the said second party hereto twenty-five per cent. of all the net profits received by said inventions, and each and all thereof, by the said first party.

"Said profits shall be all money received by said first party, after the expenses are paid, either in the manufacturing or selling of said inventions, or in anywise in disposing of said inventions.

"Said second party agrees to help in any capacity in the manufacturing and selling of said inventions that may be best; but does not have to devote all his time until his profits reach the sum of three hundred and fifty dollars per month."

This agreement was signed by both parties. In July of that year a meeting was held, at which plaintiff and defendant and Carl Henze, a brother of

plaintiff, who had advanced some money in the enterprise, and others were present, and at which John C. Meissner, a public accountant, was also present at the request of the defendant. There was discussion concerning the organization of a corporation and the several interests the parties should have therein. A later meeting was held, at which the contract of March 2d was produced by the defendant and used by Meissner in the computations made by him as to the amount of stock to which each of the parties was entitled.

Articles of association were executed on September 28, 1923, with capital stock fixed at $25,000, divided into 250 shares of $100 each; 143 shares were allotted to the defendant, 58 to the plaintiff, 15 to plaintiff's brother Carl, and the balance to three other persons. This division was apparently satisfactory to plaintiff, as he made affidavit attached thereto, which was filed with the secretary of State. The name assumed was ''Hutto Engineering Company.'' There were several increases in the capital stock, and a reorganization on October 20, 1926, under the name of ''Hutto Engineering Co., Inc.,'' under which both preferred and non-par stock was issued. The share allotted to plaintiff was apparently in the same proportion to that allotted to defendant as in the original articles, except that certain sales had been made by them both.

It appears that plaintiff was in the employ of the corporation as superintendent for some time, but left at the request of the defendant on August 2, 1926. The bill of complaint herein was filed on March 1, 1929. In it plaintiff alleged that in 1922, before either of them left Bryan for Detroit, an agreement was entered into between them that, in consideration of plaintiff's assisting defendant in

the development of his invention, defendant would pay to him "one-half of all moneys, property or other things" that he should thereafter receive by reason thereof; that he rendered such assistance, boarded defendant at his home in Detroit, and expended a considerable sum of money in aid thereof; that, at the time the written agreement above quoted was entered into, defendant promised him that when the corporation was formed he would receive this 25 per cent. in stock and an additional 25 per cent. so as to make his interest therein equal to that of the defendant; that his after demands therefor were met with indifference or excuses, and that he was rightfully entitled to 30,671½ shares of the non-par stock then owned by the defendant, and that defendant had made sale of a part of said stock and received therefor a sum in excess of $1,000,000. In his prayer for relief he prayed for an injunction to restrain further sales, for an accounting as to profits received, and for specific performance of the agreement under which he was to receive the stock above referred to.

An amended bill was filed by leave of the court on February 20, 1930, and after the proofs had been submitted. In it he claimed that by virtue of the agreement between him and defendant he was entitled to 40,895⅓ shares of the non-par stock issued to defendant. There were other allegations somewhat at variance with those in the bill first filed.

The proofs were submitted in open court. The trial court, while apparently impressed with the testimony submitted by plaintiff to establish the oral contract for an equal division of the profits arising out of the invention, alluded to the written contract of March 2, 1923, and the fact that plaintiff attended all of the meetings resulting in the organization of

the corporation and the issue of the stock thereof "without a word or notice to any one that he claimed an interest greater than that for which his stock was issued," and concluded that he was not entitled to relief in a court of equity. A decree was entered dismissing the bill, from which plaintiff has taken an appeal.

At the time the written contract of March 2d was entered into, plaintiff was about 45 years of age. He was at that time acting as superintendent of the Gray & Hawley Manufacturing Company, manufacturers of "mufflers and cut-outs." Just before that time he had served in a similar capacity for a manufacturing firm at Bryan, Ohio, as before stated. If there was an oral agreement between him and the defendant under which he was to have a one-half interest in the invention, it almost passes human understanding to believe that he would have signed the written contract, plainly worded as it was, and in which it was agreed that he should receive but 25 per cent. of the net profits of the inventions. If it be conceded that these parties were at the time warm personal friends and had the utmost confidence in each other, the presentation of this written agreement to plaintiff for his signature, when there was no reason for making one which should state other than the truth as to the interest to which he was entitled under the claimed oral contract, would naturally arouse the suspicion of any person familiar with the effect of written instruments as plaintiff then was by reason of the executive positions in corporations in which he had served.

The corporation was afterwards organized and about 25 per cent. of the interest therein to which defendant was entitled was allotted to plaintiff in shares of stock. It is difficult, indeed, to credit his

testimony that he permitted this to be done at defendant's request and in order that he might retain control of the company, without even a suggestion on his part that the stock to which he was entitled should be transferred by defendant to him and held without reissue, or at least without having some memorandum in writing to show that he was entitled thereto.

The written contract was executed on March 2, 1923. The record does not disclose that any writing in the nature of a demand, or expressive of any effort on plaintiff's part to secure the performance of the parol agreement, passed between the parties, and the first written evidence of his claim thereunder is found in the bill of complaint filed on March 1, 1929, about six years thereafter. He was, as he felt wrongfully, discharged by defendant in August, 1926, and yet his bill of complaint was not filed for nearly three years after that time.

Plaintiff's testimony as to the parol agreement was supported by that of other witnesses, who testified that they had heard defendant say that plaintiff was entitled to an equal share in the business. Had this testimony been submitted within a short time after the statements were said to have been made, it would be more convincing. Defendant admits that plaintiff was to have a share in the net profits of the business and that he so stated, but denies that it was to be an equal share, and the witnesses might have so understood and be honest in their statements without the word "equal" having been used. There was proof of statements by plaintiff that he was to have but a one-quarter interest therein.

In *Russell* v. *Miller*, 26 Mich. 1, 16, it was said:

"Where parties have had verbal conversations concerning property of small value, and it afterwards becomes of great value, their recollections are apt to be biased by the rise, and a very vague talk may become transformed into an agreement, without the interested party being conscious how far he has deceived himself. This tendency is so familiar that we can put little reliance on the acts or statements made after the value has begun to increase. * * * But the acts of the parties are stronger than their words, even when freshly reported. And throughout the case, Miller appears to have acted openly as proprietor of what was in his own name, and Russell has done the reverse, and acted as owners do not act."

Plaintiff's right to recover depends entirely upon the establishment of the parol agreement by a preponderance of the evidence. If it be conceded that more weight be given to the testimony of his witnesses in support thereof than to that opposed to it, we have yet to consider in its bearing thereon the written contract executed by him and the written evidence of his acceptance of its provisions and his apparent satisfaction therewith for a period of nearly six years.

In *Wenzel* v. *Kieruj*, 168 Mich. 92, 98, this court said:

"We understand the rule of law to be that prior mutual understandings of the parties are unimportant, when they have signed a contract covering the subject-matter, since the latter includes and covers all such prior negotiations and agreements. In *Rumely & Co.* v. *Emmons*, 85 Mich. 511, 517, this court said:

" 'It is a well-settled rule of law that, when the parties have reduced their contract to writing, it must be presumed that the writing contains the whole of the agreement, and all parol contemporaneous agreements are merged therein.' * * *

"The general rule is that you cannot import into a written agreement a prior parol agreement which alters the terms or legal effect of the written agreement."

See, also, *Smith* v. *Mathis*, 174 Mich. 262, and *Ogooshevitz* v. *Arnold*, 197 Mich. 203.

The decree dismissing the bill of complaint is affirmed, with costs to appellees.

CLARK, C. J., and McDONALD, POTTER, NORTH, FEAD, WIEST, and BUTZEL, JJ., concurred.