KEYSTONE COAL & COKE CO. *v.* FORREST.

1. TRIAL — INSTRUCTIONS — CONTRACTS — ACCEPTANCE — APPEAL AND ERROR.

  In an action for a balance due for coke furnished under two written contracts, where defendant accepted all the coke shipped to him, although he complained that part of it was inferior, *held*, that he could not complain because the question as to whether he was entitled to an allowance for loss by reason of said claimed inferiority was submitted to the jury.

2. SAME—CONTRACTS—BREACH.

  Where the contracts provided for the shipment of a certain number of tons of coke a month, and provided further

that failure to accept the agreed amount during the warmer months gave plaintiff the right to deduct any such shortage from the amount to be furnished during the colder months, and there was evidence that defendant requested that instead of the amounts provided in the contracts, coke be shipped only on his order, and all his orders were filled, his contention that plaintiff was conclusively shown to have breached the contract cannot be sustained.

3. SAME—INSTRUCTIONS—CONTRACTS—CONSTRUCTION.

Where the contracts were introduced in evidence, were unambiguous and required no construction, and there was also a large number of letters and telegrams introduced which were properly for the consideration of the jury, the charge of the court that the exhibits were all for the consideration of the jury, *held*, not objectionable as submitting to the jury the construction of the contracts.

4. SAME—ISSUES SUBMITTED.

*Held*, that the charge as a whole fairly submitted the issues to the jury.

Error to Genesee; Brennan (Fred W.), J. Submitted October 8, 1920. (Docket No. 69.) Decided February 3, 1921.

Assumpsit by the Keystone Coal & Coke Company against George Forrest for goods sold and delivered. Judgment for plaintiff. Defendant brings error. Affirmed.

*Carton, Roberts & Stewart* and *Charles A. Withey,* for appellant.

*Van Benschoten & Millard,* for appellee.

CLARK, J. The plaintiff is a corporation of Pittsburgh, Pennsylvania, engaged in mining coal and marketing coal and coke. The defendant is a retail dealer in coke at the city of Flint. On February 4, 1915, they entered into the following contract:

"Keystone Coal & Coke Company, Park Building, Pittsburgh, Pa. No. D-6568. Contract. Pittsburgh, Pa., February 4, 1914 (1915). The Keystone Coal & Coke Company, of Pittsburgh, Pa., agrees to sell and George Forrest, of Flint, Michigan, agrees to buy: Material—Connellsville egg, stove and chestnut sized crushed coke. Quantity—Five thousand tons. Period —April 1, 1915, to April 1, 1916. Price—Egg size, $2.15 per net ton, F. O. B. ovens; chestnut size, $2 per net ton, F. O. B. ovens. Terms—Net cash settlements in full upon arrival of cars. Shipping directions—George Forrest, Flint, Michigan. Route— Toledo, Ohio, Grand Trunk delivery.

"Note—Two thousand five hundred tons of coke to be delivered in equal monthly quantities during the months of April, May, June and July, August and September, 1915, and two thousand five hundred tons to be delivered in equal quantities during October, November and December, 1915, and January, February and March, 1916. It is further agreed that should the buyer fail to accept the said 2,500 tons during the months of April, May, June, July, August and September, 1915, in monthly quantities as above stated, any such shortage may be deducted, at the option of the sellers, from the 2,500 tons required during the months of October, November and December, 1915, and January, and whatever that balance might be, is to be delivered in equally distributed amounts throughout the last half of this contract. It is further agreed that 50 per cent. of this amount is to be stove, 25 per cent. egg and 25 per cent. chestnut size crushed coke. Every effort will be made for the prompt and faithful fulfillment of contract, but seller will not be responsible for the delivery of same, if prevented by strikes or combinations of miners or laborers, accidents in the mines, or interruptions of transportation, or by inability to secure the necessary cars, or from any other cause or occurrence beyond seller's control. In such cases obligations to deliver under this contract are limited and qualified to such extent as deliveries shall be prevented thereby, and no liability shall be incurred by the seller for damages resulting therefrom. It is understood and agreed that if there should be a shortage of cars the shipper will endeavor to apportion shipments equitably and uniformly on all orders.

Buyers will not be under obligations to receive under this contract providing works are not in operation and due notice thereof is given to seller. Each month's delivery is to be treated and considered as a separate and independent contract.

(Signed) "GEORGE FORREST.

"Accepted:
  "KEYSTONE COAL & COKE CO.,
    "By (signed) E. M. GROSS, Mgr."

Because of shortage of cars and other causes beyond its control, as plaintiff claims, coke sufficient to supply defendant's demands under the contract was not furnished. Late in 1915, plaintiff suggested to defendant that coke might be obtained from another company, the United Connellsville Coke Company. On November 15, 1915, after some correspondence, a second contract between the parties was made respecting "United" or "United Connellsville" coke. It seems there was an agreement between the plaintiff and the United Connellsville Coke Company that at the plaintiff's request and to its order for delivery to defendant coke would be shipped to Flint. Under this second contract plaintiff was to cause to be shipped for the defendant of the United coke four cars per week, two of stove, one of egg and one of chestnut. The contract, like the first, was to expire April 1, 1916. The contract in part:

"Except when otherwise provided for, above, deliveries are to be as nearly as possible in equal proportionate monthly amounts on buyer's written orders. Any delivery in excess of any monthly *pro rata* to be at seller's option. Time and terms of payment are essential hereto, and any default therein, and also any failure of orders during any entire current month, or any proceedings in insolvency or bankruptcy, or for a receiver, against the buyer shall authorize the seller, at its option, to cancel this contract without notice, and such right shall continue and shall not be waived by any failure of seller to exercise its right in any particular case. * * * Seller will make every effort

for the prompt and faithful fulfillment of contract, but will not be responsible for delivery hereunder if prevented by strikes or combinations of miners or laborers, accidents in mines or otherwise, fire or flooding, interruptions of transportation, failure of car supply, or from any other cause beyond seller's control. In such case the obligation of the seller to deliver coke hereunder is limited and qualified to such extent as deliveries shall be prevented thereby, and no liability shall be incurred by the seller for any damages resulting therefrom. It is understood also that in case there should be a shortage of cars at the mines from which the seller proposes to ship this contract, shipments will be apportioned equitably and uniformly on all contracts or orders so far as the same can be accomplished."

On November 20, 1915, plaintiff, upon receiving the second contract signed by defendant, by letter stated to defendant:

"If the coke is not satisfactory, we will have to know, say, by December 15th, otherwise it will be understood that the coke will be taken."

Thereafter certain shipments of both Keystone coke under the first contract and United coke under the second contract were made. The defendant, though he complained several times of the quality of a part of the chestnut coke, accepted all cars shipped to him. He had no yard or sheds, it seems, and delivery to his customers was made by wagons directly from cars, which method of handling the coke resulted in his being obliged to pay for car service.

On April 10, 1915, defendant wrote plaintiff as follows:

"Please do not ship coke until I order; weather keeps warm here. It costs me nearly a dollar a ton to move it."

which was followed by correspondence, the plaintiff complaining of defendant's refusal to accept shipments

of coke under the contract and defendant insisting that such refusal was unavoidable.

About May 10th, defendant ordered one car of egg coke, on May 20th, one car of stove, and on May 28th, one car of egg. These were shipped by plaintiff. On June 4th, plaintiff requested defendant to accept a car or two of chestnut. This he refused. Thereafter the defendant from time to time during the term ordered coke, of which a witness for plaintiff testified:

"*Q.* Mr. Syroth, did you fill all the orders given your company by Mr. Forrest?

"*A.* Yes, sir; every order sent us was filled the size and quantity and every order was met, and we sent no coke to him except as we had written advice to do so.

"*Q.* Do you say that both the contracts of February 4, 1915, and November 15, 1915, were filled?

"*A.* Yes, sir. They were filled because we shipped the amount of coke Mr. Forrest ordered." * * *

Defendant in January, 1916, complained that he was receiving too large a proportion of chestnut coke, and he complained several times of delays in arrival of cars. A few days before the date of the expiration of the contracts, April 1, 1916, plaintiff wrote to defendant suggesting that the contracts were about to expire and that coke was commanding higher prices and inquiring as to further dealings. To this point the relations of the parties seem to have been friendly, and marked by mutual concessions and recognition of the difficulties attending manufacture, transportation and sale of the product. Defendant replied that he had 45 cars due him according to contract. This was followed by correspondence, the plaintiff claiming that coke had been shipped as ordered by defendant, and that it had fully met the requirements of the contracts, and asked that the balance due it, $1,259.37, be paid. Defendant on May 5, 1916, sent remittance of $648.51, and a claim for credit of $10.86 and said as to the bal-

ance: "leaving balance of $600 due you" and "you will get your $600 soon." Later, the amount not being paid, plaintiff brought suit to recover the balance of $610.86. Defendant pleaded the general issue with notice of counterclaim:

"To the amount of egg and stove coke short on
    delivery on the contract of plaintiff, dated
    February 4, 1915, based on the percentage of
    chestnut size received under that contract:
Stove size coke short, 741-7/20 tons at $1.87½
    per ton ................................$1,390.03
Egg size coke short, 466-9/10 tons at $1.87½
    per ton ................................   875.44
Chestnut size coke short, 516-7/10 tons at $1.87½
    per ton ................................   968.81
To loss ón inferior quality of coke shipped un-
    der second contract, 1,594 tons at $1.50...... 2,391.00
To shortage on car of coke, No. 87,494........    10.86
                                                 _____
                                                 $5,636.14
To interest on the above amount at 5 per cent.
    per annum from date of failure to supply until
    this date ................................   868.90
                                                 _____
                                                 $6,505.04"

The trial resulted in a verdict for plaintiff for the full amount of its claim. Defendant here has numerous assignments of error.

1. Overruling defendant's motion for a new trial. Defendant contends that upon undisputed evidence he was entitled to a verdict for the amount of claimed loss on inferior quality of coke shipped, $2,391 less the amount of plaintiff's claim and interest, $690, or the sum of $1,701, and that the court therefore erred in the denial of the motion. Defendant accepted all this coke. He complained of part of it but said, "we will try and get along with it." After all the coke had been delivered and accepted defendant paid a part of the account of plaintiff and promised to pay the balance. The court permitted the jury to say whether

or not defendant might recover on this part of his claim, and, from a reading of all of the evidence, we think the defendant on this point may not complain. A new trial was also asked on the ground that the verdict was against the great weight of the evidence and, seemingly under this assignment, counsel argue that a breach of the contract by the plaintiff respecting the furnishing of coke was conclusively shown. There was evidence that defendant requested that coke be shipped only on his order and that all his orders were filled. Following the contracts there was correspondence indicating an understanding that coke shipped under the second contract might be applied on the first. The first contract provided that a failure to accept the agreed amount of coke during the warmer months gave the plaintiff the right to deduct any such shortage from the amount to be furnished during the colder months. There was evidence that defendant did not accept during the warmer months the amount of coke he agreed to accept, and there was some evidence supporting a further claim of plaintiff that under the saving clause of the contract it was prevented from supplying coke by circumstances beyond its control. All this evidence, disputed in part, made, at least, a question of fact for the jury, and its verdict is well sustained by the record.

2. The following excerpt from the charge is said to be erroneous:

"There have been a great many exhibits introduced here and they include Exhibits 1 and 2, or 1-A and 2, I think it is called, which constitute the contracts. They are all for your consideration, gentlemen, and it is for you to sift out from this multitude of correspondence and documentary evidence the rights of these parties."

The contracts, Exhibits 1 and 2, were not ambiguous, were not claimed to be, and required no construction. The court, therefore, could not have in-

tended, though counsel contend otherwise, to have submitted to the jury the construction of the contracts, which, if necessary, would have been for the court, not the jury. See *Wenzel* v. *Kieruj*, 168 Mich. 92; *Tompkins* v. *Gardner & Spry Co.*, 69 Mich. 58. But in addition to the contracts there were 136 exhibits, principally letters and telegrams of the parties. These were important to a consideration of the issues of fact, heretofore mentioned, raised by the parties, and were for the jury. We do not think that the jury was misled by the language quoted.

3. Many other errors are claimed, largely in the charge. All have been considered. By the charge taken as a whole the issues of fact were fairly submitted to the jury. We think the verdict is just. We find no reversible error.

The judgment is affirmed.

STEERE, C. J., and MOORE, FELLOWS, STONE, BIRD, and SHARPE, JJ., concurred.

The late Justice BROOKE took no part in this decision.